IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHANTHON BUN,

        Plaintiff,                     No. CIV S-09-0631 LKK EFB P

    vs.

T. FELKER, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

                                /

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Brown, Kissinger, Watkins, Hook, Kirkland, Handshumaker, Essman, Lower, Felker, Sanchez, Garate, Aurich, Ramsey, and Kirkland ("defendants") move to dismiss on the ground that plaintiff has failed to exhaust administrative remedies.[1] *See* Defs.' Mot. to Dism., Dckt. No. 23 ("Mot."). Plaintiff filed an opposition and defendants filed a reply. Dckt. Nos. 25, 31. Thereafter, plaintiff filed a surreply.[2] Dckt. No. 37. For the reasons that follow, the court recommends that the motion be denied.

---

[1] Although defendants Perry and Marsh have been served, they did not join in the motion. *See* Dckt. Nos. 33, 38.

[2] As a surreply is neither contemplated by the Federal Rules of Civil Procedure nor the Local Rules, it will be disregarded.

1

### I.     Exhaustion Under The PLRA

The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, an inmate is required to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Although a motion to dismiss for failure to exhaust administrative remedies prior to filing suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), when ruling on such a motion requires the court to look beyond the pleadings in the context of disputed issues of fact the court must do so under "a procedure closely analogous to summary judgment." *Id.* 1119, n.14. Because care must be taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned applies the standards applicable under Rule 56 to exhaustion motions which require consideration of materials extrinsic to the complaint. *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL 3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

Defendants bear the burden of proving plaintiff's failure to exhaust. *Wyatt*, 315 F.3d at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

On April 12, 2010, the court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14.

## II.      Plaintiff's Allegations

This action proceeds on plaintiff's original complaint. Compl., Dckt. No. 1 ("Compl."). Plaintiff alleges the following. On November 24, 2006, a member of the High Desert State Prison staff (defendant Aurich) was assaulted. *Id.* at 4.[3] Plaintiff, along with eighteen other inmates, was suspected of being involved. *Id.* After the assault, defendant Marsh kept plaintiff in handcuffs, and on his knees, contaminated with pepper spray, for over eight hours. *Id.* at 27. Defendants Marsh, Perry, Hook, Lower, Handshumacker, and Ramsey also took plaintiff outside for thirty minutes in sub-zero temperatures, while plaintiff was wearing only boxer shorts and ankle shackles. *Id.* at 9, 27. Despite various injuries and a need for medical attention, defendants Kirkland, Kissinger, and Perry denied plaintiff's requests for medical care. *Id.* at 24-25, 28. Plaintiff told defendant Watkins, a medical technical assistant, about his injuries, but she refused to treat him. *Id.* at 8. Watkins also falsified a medical report, indicating that plaintiff was allowed to decontaminate from the pepper spray, which was false. *Id.* Defendants Sanchez and Essman did not give plaintiff food from November 24, 2006 to November 28, 2006. *Id.* at 9-10. On November 28, 2006, defendant Kirkland pushed plaintiff into a holding cage, attempted to scrape plaintiff's face against the cage, and directed racial epithets at plaintiff. *Id.* at 10-11. Kirkland stripped plaintiff to his boxers and put him in a cell that was flooded with toilet water, had no mattress, bedding or hygiene items, and no soap to clean his wounds. *Id.* at 11-12. From this point through August 2007, Kirkland, who was sometimes joined by defendants Kissinger, Sanchez, Garate, or Aurich, would pull plaintiff from his cell at least every week for a cell search, and when plaintiff would return, his cell would be flooded with toilet water, and his property, including inmate appeals, his toothbrush, soap and bedding, would be missing or thrown in the toilet. *Id.* at 13, 15-17, 21-23. These defendants would also refuse to give plaintiff yard time, laundry service or other programs, tamper with or throw plaintiff's food at him,

---

[3] For ease of reference, all references to page numbers in the complaint are to those assigned via the court's electronic filing system.

4

confiscate his incoming and outgoing mail, and direct racial epithets at him. *Id.* at 18-20. Kirkland continued to harass plaintiff until October 5, 2008. *Id.* at 18, 23-24, Exs. P, Q, R. On March 20, 2008, April 11, 2008, and April 27, 2008, plaintiff informed defendant Felker about the constant harassment from Kirkland and his junior officers. *Id.* at 23.

Liberally construed, plaintiff's complaint states the following claims: 1) Eighth Amendment claims against defendants Marsh, Perry, Hook, Lower, Handshumacker, Ramsey, Kirkland, Kissinger, Watkins, Sanchez, and Essman for their alleged treatment of plaintiff immediately following the November 24, 2006 assault; 2) Eighth Amendment and First Amendment retaliation claims against defendants Kirkland, Kissinger, Sanchez, Garate and Aurich, based upon plaintiff's allegations that between November 28, 2006 and October 5, 2008, one or more of these defendants continued to harass plaintiff by subjecting him to physical assaults, unnecessary cell searches and unsanitary conditions, depriving him of basic necessities, tampering with his food, using racial epithets, destroying his personal and legal property, including inmate appeals, denying him yard time and other programs, and throwing away his mail; and 3) an Eighth Amendment claim against defendant Felker, for allegedly failing to protect plaintiff from the constant harassment.

### III.   Plaintiff's Inmate Appeals

In support of their motion to dismiss, defendants submit: 1) portions of plaintiff's medical and central files; 2) the declaration of D. Foston, the Chief of the Inmate Appeals Branch for the California Department of Corrections and Rehabilitation ("Foston Decl."); and 3) the declaration of D. Clark, the Appeals Coordinator for the Institutional Appeals Office at High Desert State Prison ("Clark Decl."). According the Foston and Clark Declarations, only the following eight of plaintiff's inmate appeals were accepted for review between November 24, 2006 and November 26, 2008. Foston Decl. ¶¶ 3-5; Clark Decl. ¶¶ 6-8.

////

////

### A. Appeal HDSP-Z-07-01911

This appeal is dated May 20, 2007. Clark Decl., Ex. 1. In this appeal, plaintiff challenged the Rules Violation Report finding him guilty of attempted murder on a peace officer and requested that the charge be expunged from his record. *Id.* Plaintiff also claimed that because of the charge, he was being retaliated against in that he was being denied access to his mail, and requested that he be transferred to another prison to avoid the retaliation. *Id.* Plaintiff pursued this appeal through the second level of review. *Id.* ¶ 8, Ex. 1.

### B. Appeal HDSP-Z-07-02169

This appeal is dated June 17, 2007. *Id.*, Ex. 2. Plaintiff claimed that from December 5, 2007 through June 14, 2007, Kirkland had tampered with plaintiff's food and conducted "random" cell searches in retaliation for plaintiff's attempted murder charge. *Id.* Plaintiff also claimed Kirkland had put his bedding, soap, shampoo and toothbrush in the toilet, threw away plaintiff's property, and denied him yard time. *Id.* Plaintiff stated he had filed many inmate appeals without ever getting a response back, because his appeals and his mail were being thrown away. *Id.* Plaintiff pursued this appeal through the first level of review. *Id.* ¶ 8, Ex. 2.

### C. Appeal HDSP-Z-07-03229

This appeal is dated September 17, 2007. *Id.*, Ex. 3. In this appeal, plaintiff explained that Kirkland had been denying plaintiff yard time and "randomly" searching plaintiff's cell to look for inmate appeals against him. *Id.* Plaintiff noted that on February 2, 2007, Kirkland and Aurich threw plaintiff's dinner at him. *Id.* Plaintiff claimed that Kirkland and Aurich later searched plaintiff's cell and confiscated plaintiff's personal property, including an inmate appeal plaintiff had prepared regarding the thrown food. *Id.* Plaintiff also stated that in July 2006, Kirkland threw bars of soap at plaintiff, searched plaintiff's cell and, as Kirkland had done in the past, removed all personal, legal and bedding items, including appeal HDSP-Z-07-1911, which was on its way to the final level of review. *Id.* Plaintiff requested that Kirkland be investigated

////

for his misconduct. *Id.* Plaintiff pursued the appeal through the third level of review. *Id.* ¶ 8, Ex. 3; Foston Decl. ¶ 3.

### D. Appeal HDSP-Z-07-03710

This appeal is dated October 31, 2007. Clark. Decl., Ex. 4. In this appeal, plaintiff challenged a rules violation report finding him guilty of altering state clothing. *Id.* Plaintiff also alleged that Kirkland had refused to let plaintiff out to yard and searched plaintiff's cell in retaliation for plaintiff filing complaints against him. *Id.* Plaintiff also claimed that Kirkland had retaliated against him by taking his clothing, smashing his food, throwing away his toothbrush, toothpaste, soap and toilet paper, and sometimes throwing toilet water in his bedding. *Id.* This appeal was denied at the second level, where it was considered exhausted. *Id.* ¶ 8, Ex. 4; Foston Decl. ¶ 5.

### E. Appeal HDSP-Z-08-00254

This appeal is dated January 13, 2007. Clark Decl., Ex. 5. In this appeal, plaintiff claimed that Aurich had been harassing plaintiff with offensive comments and by implying he had tampered with plaintiff's food. *Id.* Plaintiff indicated he had previously complained about Aurich. *Id.* Plaintiff claimed Kirkland has been threatening him and that both Kirkland and Aurich were in a campaign of harassment against plaintiff. *Id.* Plaintiff pursed this appeal through the first level of review. *Id.* ¶ 8, Ex. 5.

### F. Appeal HDSP-Z-08-01206

This appeal is dated April 26, 2008. *Id.*, Ex. 6. In this appeal, plaintiff explained that he previously appealed the same matter but received no response. *Id.* Plaintiff claimed that on April 10, 2008, Kirkland, who was working overtime in Z-Unit, threw away plaintiff's mail, as he had done in the past, in retaliation for inmate appeals plaintiff had filed against him. *Id.* Plaintiff pursued this appeal through the third level of review. *Id.* ¶ 8; Foston Decl. ¶¶ 3, 5.

////

////

### G. Appeal HDSP-Z-08-01906

This appeal is dated June 21, 2008. Clark Decl., Ex. 7. In this appeal, plaintiff complained that the appeals coordinator had sent plaintiff's previously filed inmate appeal regarding Kirkland not giving plaintiff laundry, to Kirkland, even though plaintiff explained in the earlier appeal that Kirkland throws his inmate appeals away. *Id.* Plaintiff noted that he informed the appeals coordinator that Kirkland had not responded to the earlier filed inmate appeal because Kirkland probably threw it away. *Id.* Plaintiff alleged that Kirkland had been retaliating against plaintiff in this way for the last year, and added that Kirkland had refused to feed and/or tampered with plaintiff's food, thrown away plaintiff's mail, legal papers and hygiene items, thrown toilet water on his bedding, called plaintiff racial epithets, and denied plaintiff yard. *Id.* Plaintiff pursued this appeal through the first level of review. *Id.* ¶ 8, Ex. 7.

### H. Appeal HDSP-Z-08-01989

This is a group appeal, which plaintiff signed as a group member, on June 20, 2008. *Id.*, Ex. 8. The appeal requested that televisions be allowed in the Z-Unit. *Id.* While this appeal was pursued through the third level of review, it does not address the claims raised by plaintiff in this lawsuit. *See id.* ¶ 8, Ex. 8; Foston Decl. ¶ 3.

## IV. Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies

### A. Defendants' Motion

Defendants move pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss some of plaintiff's claims for failure to exhaust. Defendants argue: 1) that plaintiff's claims arising out the alleged treatment he received immediately following the November 24, 2006 assault are unexhausted because plaintiff failed to file any inmate appeal concerning those events; and 2) that plaintiff's appeals did not exhaust his claims against Aurich, and only exhausted some of his claims against Kirkland, because plaintiff failed to timely appeal the alleged actions giving rise to those claims. Mot., Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at 10-12.

1      As discussed above, defendants submit evidence that between November 24, 2006 and
2  November 26, 2008, plaintiff submitted eight inmate appeals that were accepted for review.
3  Defendants argue that none of these appeals concern his alleged treatment immediately
4  following the staff assault on November 24, 2006. *Id.* at 10.  Defendants also submit evidence
5  that administrative remedies were available to plaintiff.  According to the declaration of D.
6  Clark, Appeals Coordinator at High Desert State Prison, an inmate in administrative segregation
7  may submit any inmate appeals to any staff member for that staff member to place in the mail
8  bag for processing.  Clark Decl. ¶ 5.  Defendants submit evidence that while plaintiff was in
9  administrative segregation from November 2006 through November 2008, he came into contact
10 with custody officers from every work shift on a daily basis.  Mot., Ex. A (custody records).
11 Defendants also submit evidence that plaintiff was seen by medical, dental or psychiatric staff on
12 various dates.  Mot., Exs. A, B (medical records).  Defendants contend that during any of these
13 visits, plaintiff "could have submitted an inmate appeal to staff members, including the custody
14 staff officers who escorted him to these appointments and the medical staff who evaluated him."
15 Defs.' P. & A. at 10.

16     Defendants also concede that plaintiff exhausted appeals HDSP-Z-07-03229, HDSP-Z-
17 07-03710, and HDSP-Z-08-01206.  *Id.*  According to defendants, however, appeal HDSP-Z-07-
18 03710 did not address the issues raised by this lawsuit, and appeals HDSP-Z-07-03229 and
19 HDSP-Z-08-01206, while referencing defendants or issues raised by this lawsuit, did not exhaust
20 all of plaintiff's claims.  *Id.* at 10-13.

21     Defendants argue that appeal HDSP-Z-07-03229 "only exhausted events that allegedly
22 happened fifteen working days before the date" of the appeal, i.e., only claims contained in the
23 appeal that occurred between August 24, 2007 and September 17, 2007.  *See id.* at 12.
24 ////
25 ////
26 ////

Defendants cite to Cal. Code Regs., tit. 15, § 3084.6(c), which stated that an inmate appeal must be submitted "within 15 working days of the event or decision being appealed . . . ."[4] *See id.* at 11-12. Defendants contend that all allegations in the appeal regarding events that occurred before August 24, 2007 are not exhausted because they were not timely raised. *Id.* at 12.

Applying the same reasoning, defendants argue that because appeal HDSP-Z-07-01206 was dated April 26, 2008, plaintiff "could only appeal events that occurred between April 7, 2008, and April 26, 2008." *Id.* Defendants also argue that the appeal could not have exhausted any of plaintiff's claims anyway, because plaintiff alleged in his complaint that Kirkland was not assigned to his housing unit in April 2008, and because "[t]here are no specific allegations of misconduct on the part of Kirkland between April 7, 2008 and April 26, 2008, contained within his complaint . . . ." *Id.*

### B. Plaintiff's Opposition

In his opposition, plaintiff asserts that prison staff retaliated against him and harassed him because of his alleged involvement in the November 24, 2006 staff assault. Pl.'s Opp'n to Mot., Dckt. No. 25 at 2. He claims that despite his requests, he was not provided with an inmate appeal form until December 1, 2006. *Id.* at 2-3. Plaintiff claims he prepared an inmate appeal regarding the events of November 24, 2006 through November 28, 2006, but that Kirkland and others confiscated it. *Id.* at 3. Plaintiff claims he continued to try to file an appeal, but either Kirkland or Kissinger, who were responsible for picking up mail, would throw the appeals away. *Id.* at 3-4. Plaintiff claims further that Kirkland would "always" conduct cell searches looking for plaintiff's inmate appeals and that plaintiff could not send out an appeal because correctional officers would throw them away. *Id.* at 4, 9. Additionally, plaintiff states he could not give an inmate appeal to medical staff because it would result in retaliation. *Id.* at 9. Plaintiff claims that

---

[4] Section 3084.6(c) has since been amended and section 3084.8(b), effective January 28, 2011, now provides that the appeal must be submitted within "30 calendar days" of the event or decision being appealed.

he was finally able to get an appeal through on May 19, 2007, with the help of another inmate.[5] *Id.* at 4. After filing this appeal, plaintiff claims he was assured by a lieutenant that if plaintiff gave his appeals directly to him, his appeals would be processed. *Id.*

### C. Defendants' Reply

In their reply brief, defendants argue that plaintiff has presented no admissible evidence that Kirkland, or anyone else, interfered with his attempts to file inmate appeals by throwing them away. Defs.' Reply to Opp'n, Dckt. No. 31 ("Reply") at 3-4. Defendants also argue that plaintiff did not file any appeal that named defendants Brown, Kissinger, Watkins, Hook, Handschumaker, Essman, Lower, Felker, Sanchez, Garate, or Ramsey. *Id.* at 2.

Further, defendants contend that plaintiff had access to the inmate appeals system through the lieutenant referenced in plaintiff's opposition brief. Reply at 2-3. Defendants contend that while inmate appeals normally must be submitted within 15 days of the event being appealed, plaintiff could have submitted an untimely appeal to the lieutenant with an explanation for the appeal's untimeliness, and that the appeal would have been accepted for review and could have exhausted his claims. *Id.* Defendants submit evidence that "if an inmate submits an appeal that includes a statement explaining why he could not submit the appeal within the time frame under 3084.6, depending on the explanation, the appeal will generally be accepted for review." *Id.*, Suppl. Decl. of Clark in Supp. Thereof ¶ 3. Defendants use appeal HDSP-Z-07-03229 as an example of an appeal accepted for review this way, and suggest that plaintiff could have pursued other appeals this same way in order to satisfy the exhaustion requirement. Reply at 3.

////

////

---

[5] While plaintiff does not identify by number the appeal he submitted on May 19, 2007, the court notes that the first appeal filed by plaintiff that was accepted for review during the relevant time period is appeal HDSP-Z-07-01911, which was dated May 20, 2007. *See* Clark Decl., ¶ 8, Ex. 1.

11

Defendants explain:

> In appeal log number 07-03329, dated September 17, 2007, Bun complains of events that allegedly transpired before July 6, 2007. (Decl. Clark Ex. 3.) The appeal was accepted for review, with Bun's explanation that he had submitted previous appeals, with no response. (Decl. Clark Ex. 3.)

*Id.*

## V.     Analysis

The court finds that defendants have not met their burden of proving the absence of exhaustion. Defendants concede that plaintiff exhausted appeals HDSP-Z-07-03710, HDSP-Z-07-03229, and HDSP-Z-08-01206. Defs.' P. & A. at 10.

Defendants barely discuss appeal HDSP-Z-07-03710 in their motion, stating only that it was exhausted, but "did not deal the issues raised by this lawsuit." *Id.* According to defendants, this appeal "challenges the guilty finding of Rules Violation Report ASUZ-07-07-002, finding Bun guilty of altering state clothing." *Id.* at 5. Defendants fail to mention that the appeal also included plaintiff's complaints regarding ongoing harassment and retaliation from defendant Kirkland and a request that Kirkland be reprimanded for his misconduct. *See* Clark Decl., Ex. 4.

As for the other two exhausted appeals, HDSP-Z-07-03229 and HDSP-Z-08-01206, defendants argue in their motion that these appeals only exhausted events that allegedly happened fifteen working days before each appeal was submitted, even though both appeals were accepted for review and not screened out as untimely. Defs.' P. & A. at 11-12; *see also* Clark Decl., Exs. 3, 6; *Id.*, ¶ 6 ("The appeals coordinator will review the appeal, and one of two things will happen. The appeal will either be accepted for review, or it will be screened for any of the reasons set out in California Code of Regulations section 3084.3."). In advancing an unrelated argument in their reply brief, however, defendants claim that as long as plaintiff submitted an explanation for an appeal's untimeliness, it would most likely be accepted for review and would satisfy the exhaustion requirement. *See* Reply at 3-4. To make this point, defendants used appeal HDSP-Z-07-03229 as an example, explaining that it was accepted for

1  review because it included "an explanation concerning why the appeal was not timely filed . . . ."
2  *Id.* at 3.
3        The argument in defendants' reply brief directly undercuts the argument in their motion.
4  Defendants first argue that even appeals pursued through the final level of review, i.e., exhausted
5  appeals, exhaust only the allegations regarding events occurring within fifteen days of
6  submitting the appeal. Then defendants argue that a plaintiff may exhaust such untimely
7  allegations by submitting an appeal with an explanation as to why it contains those allegations.
8  Defendants acknowledge that appeal HDSP-Z-07-03229 contained such an explanation. *See id.*
9  Similarly appeal HDSP-Z-08-01206, which was dated April 26, 2008, included the following
10 explanation:

> This is a subsequent appeal of the same matter that I filed on 4-11-08 with no response. I also turned in a request for interview to your office (Appeal Coordinator) on 4-19-08 and notify you that I have not gotten a notice that my appeal has been process[ed]. Still I have not received a response from you.

14 Clark Decl., Ex. 6. The appeals coordinator had the option of screening out either appeal as
15 untimely, but instead, accepted both appeals for review. The court will not now screen out
16 portions of the inmate appeals that the appeals coordinator accepted for review. Accordingly,
17 the court finds that these appeals exhausted all of the allegations raised therein.
18       Defendants also argue that appeal HDSP-Z-07-01206, which referred to Kirkland's
19 alleged misconduct in April 2008, could not have exhausted any of plaintiff's claims because
20 plaintiff alleged in his complaint that Kirkland was not assigned to his housing unit during that
21 time. Defs.' P. & A. at 12 (citing Compl. ¶ 53). In support of their argument defendants cite to
22 paragraph 53 of plaintiff's complaint. Paragraph 53 goes on to allege:

> However, [Kirkland] would somehow get assigned to Z-unit for over time and would take this opportunity to constantly harass plaintiff. Kirkland would also ask and incurrage [sic] the junior c/os to harass plaintiff.

25 Compl. ¶ 53. Plaintiff also cited to Exhibit P of his complaint, *see id.*, ¶ 54, which includes an
26 April 11, 2008 letter from plaintiff to Warden Felker, specifically alleging that Kirkland worked

13

overtime in plaintiff's unit on April 10, 2008, and "picked up [plaintiff's] mail and crumbled it and threw it on the floor" in retaliation for plaintiff's attempted murder charge and for complaining about Kirkland's "harassment and misconduct." *Id.*, Ex. P. As defendants' argument rests on a narrow and incomplete reading of the complaint, the court finds it lacks merit.

In all three of plaintiff's exhausted appeals, plaintiff complained that he had been harassed and retaliated against, mostly by Kirkland, because of plaintiff's suspected involvement in the November 24, 2006 staff assault and because plaintiff had filed inmate appeals. Plaintiff included specific examples of the alleged harassment and retaliation, including confiscation of his mail, inmate appeals and other property, including bedding and hygiene items, random cell searches, food tampering, physical assaults, denial of yard time, and contamination of his cell and property with toilet water. In light of these appeals, the court cannot find that defendants have met their burden of proving the absence of exhaustion.

It is immaterial that plaintiff's appeals did not specifically identify all of the defendants in this action, as "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. It is also immaterial that plaintiff may not have described every alleged instance of harassment or retaliation, as "plaintiff was not required to limit the allegations in his civil rights complaint to the allegations set forth in his administrative appeal[s]." *Mehari v. Cox*, No. Civ. S-08-1089 MCE DAD, 2009 U.S. Dist. LEXIS 42207, at *9-10 (E.D. Cal. May 19, 2009).

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

*Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). *See also Jones*, 549 U.S. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a

particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")).  The court finds that plaintiff's exhausted appeals were sufficient to put prison officials on notice of his claims of ongoing harassment and retaliation following the November 24, 2006 staff assault.

## VI. Conclusion

As noted above, defendants have the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies.  *See Jones*, 549 U.S. at 216; *Wyatt*, 315 F.3d at 1117-19.  Defendants have not carried their burden in this instance.  Accordingly, defendants' motion to dismiss for failure to exhaust administrative remedies prior to filing suit should be denied.

In accordance with the above,  IT IS HEREBY RECOMMENDED that defendants' July 29, 2010 motion to dismiss for failure to exhaust administrative remedies be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 28, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE