1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHANTHON BUN,

11             Plaintiff,              No. 2:09-cv-0631 LKK EFB P

12        vs.

13   T. FELKER, et al.,

14             Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Defendants Aurich, Brown, Essman, Felker, Garate, Handshumaker, Hook,

18   Kirkland, Kissinger, Lower, Marsh, Perry, Ramsey, Sanchez, and Watkins ("defendants") move

19   for summary judgment.  For the reasons that follow, it is recommended that the motion be

20   granted in part and denied in part.

21   **I.      Background**

22        This action proceeds on plaintiff's original complaint, which alleges that defendants

23   violated plaintiff's rights under the First and Eighth Amendments.  Dckt. No. 1 ("Compl."); *see*

24   *also* Dckt. No. 42 at 5 (findings and recommendations construing plaintiff's claims for relief).

25   The following facts are undisputed unless otherwise indicated:

26   ////

Around 8:00 p.m. on November 24, 2006, plaintiff and other inmates began fighting with Officers Schwab and Aurich at High Desert State Prison (HDSP). Defs.' Mot. for Summ. J. ("MSJ"), Ex. A ("Schwab Report") at CF006-008; MSJ, Ex. D ("Pl.'s Dep.") at 192:10-13, 206:4-17, 271:6-17.[1] When plaintiff heard alarms, he left the building and went to the yard. Pl.'s Dep. at 207:4-14. After the attack stopped, Officer Schwab went outside and sprayed plaintiff with pepper spray and handcuffed him, before Officer Schwab fell in a daze and was eventually helped up by other officers. Schwab Report at CF007; Pl.'s Dep. at 208:4-211:03, 212:10-12; MSJ, Ex G, Attach. 1 ("Marsh Report") at 57. Plaintiff and the inmates suspected of attacking the officers were ordered to kneel, but plaintiff cannot identify the officers who gave those orders. MSJ, Ex. A at CF051-52 ("Guilbeaux Report"); Pl.'s Dep. at 216:10-217:1. Officers refused to loosen plaintiff's handcuffs when plaintiff asked, but plaintiff cannot identify those officers either. Pl.'s Dep. at 270:13-271:5. When the Investigative Services Unit (ISU) staff arrived on the scene, defendant Marsh, the Facility A Sergeant, told officers to direct the inmates to breathe deeply so that fresh air could decontaminate those who had been pepper sprayed. Marsh Report at 57-58.

Around 1:00 a.m. on November 25, 2006, after ISU staff finished processing the crime scene. Plaintiff and the other inmate suspects were moved from the yard and seated at tables in the dining hall. MSJ, Ex. A at CF053 (Eldridge Report); Guilbeaux Report; Marsh Report at 58.

////

---

[1] The CM/ECF pagination for defendants' motion and supporting papers is a mess. The motion was originally filed on January 27, 2012. It was re-filed and re-served on August 3, 2012, in accordance with the court's July 24, 2012 order. *See* Dckt. No. 85 (ordering defendants to re-serve the motion along with the notice to plaintiff required by *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012) and granting plaintiff leave to file an amended opposition). Rather than simply filing a re-notice of the original motion with corrections required by *Woods* and relying on the evidence previously submitted, defense counsel appears to have printed and re-scanned the entirety of original motion and supporting documents that were e-filed on January 27. The result is that the electronically assigned case number, docket number, date and, importantly, page numbers are now illegible because new numbers are imposed over the previous ones rendering both sets of numbers unreadable. Accordingly, the citations herein do not include the CM/ECF assigned pagination for defendants' evidence in support of the motion.

Plaintiff was then interviewed by ISU staff and examined by medical staff.  MSJ, Ex. A at

CF031-33 ("Dittman Report"); Pl.'s Dep. at 222:4-15.  Officer Fletcher took photographs of

plaintiff and observed that plaintiff had no visible injuries.  MSJ, Ex. W at ¶¶ 2-3; Pl.'s Dep., Ex.

A1-A10.  Photographs of plaintiff's hands do not depict bruises or extreme swelling.  Pl.'s Dep.

at 226:15-227:16, Exs. A7, A9, A10.  There are no signs of pepper spray on plaintiff's face or

clothes in the photographs, as plaintiff was able to wipe off the pepper spray while on the yard.

*Id.* at 225:3-9, Exs. A1-A10.

After being photographed, plaintiff's handcuffs were removed, and his clothes were taken

for evidence.  *Id.* at 223:9-13; Dittman Report; MSJ, Ex. A at CF034 (HDSP Evidence Chart).

Plaintiff was left wearing boxer shorts and was handcuffed again.  Pl.'s Dep. at 234:1-20.

Around 1:45 a.m. defendant Watkins, a Medical Technical Assistant (MTA), saw

plaintiff.  MSJ, Ex. H, Watkin Interrog. Resp. No. 4.  Plaintiff claims that Watkins was biased

against him because of his alleged involvement in the staff assault and that she refused to treat

him even though he informed her of injuries to his hands, face, and legs.  Opp'n at 9, 11.

According to Watkins, she did not see any injuries and plaintiff stated "no comment" when

asked if he had any.  MSJ, Ex. H, Watkin Interrog. Resp. No. 4.  Watkins noted that plaintiff had

been decontaminated from the pepper spray through fresh air.  *Id.*

After seeing Watkins, Officers Guilbeaux and Little escorted plaintiff back to the dining

hall, where they again seated him at a table, removed his handcuffs, and placed him in waist and

leg restraints.  Guilbeaux Report.  Shortly before 4:00 a.m., defendant Perry led a team of

officers that took plaintiff and three other inmates to Facility D, Building 5.  MSJ, Ex. I, Attach.

1 at 70-71 ("Perry Report").  The walk took less than half an hour and plaintiff was escorted by

Officer Guilbeaux and defendant Officer Lower.  Pl.'s Dep. at 239:6-19; 243:12-25.  The

temperature was between 15 and 25 degrees Fahrenheit and plaintiff was wearing only boxer

shorts and shoes.  MSJ, Ex. I, Perry Interrog. Resp. No. 16; Opp'n at 8; Pl.'s Dep. at 236:12-20,

239:21-23.  As plaintiff walked, the leg restraints dug into his ankles, causing three cuts.  Pl.'s

1   Dep. at 240:15-241:9; 252:6-10.  Plaintiff did not complain during the escort that the waist or leg

2   restraints were hurting or cutting him.  *Id.* at 241:22-242:1.

3      Plaintiff was placed in a cell in Facility D, Building 5, and the waist and leg restraints

4   were removed.  *Id.* at 244:14-245:14.  Defendant Lower did not see any injuries, and plaintiff did

5   not notice that his ankles were bleeding until after he was locked in his cell, and the escort had

6   ended.  MSJ, Ex. J, Lower Interrog. Resp. No. 4; Pl.'s Dep. at 65:6-14.  At that point, plaintiff

7   asked an officer, who is not a defendant, to call the MTAs to clean and bandage his cuts, but the

8   officer told him he did not know where they were.  Pl.'s Dep. at 248:3-16.  Plaintiff then used

9   water to rinse the blood from his ankles.  *Id.* at 249:24-250:23.  The bleeding had stopped by the

10  next morning, and the cuts eventually healed on their own without infection.  *Id.*  The swelling

11  plaintiff claimed to have had in his hands from the handcuffing had also gone down by the

12  morning, but plaintiff claims that they remained slightly swollen for another four or five days.

13  *Id.* at 171:1-4.

14     Plaintiff claims that while he was housed in Facility D, Building 5, defendant Officers

15  Essman and Sanchez did not give him food or soap to clean the cuts on his ankles.  Compl.

16  ¶¶ 14-17.  Plaintiff also claims that a correctional officer prevented the MTA from providing him

17  with medical care for the injuries to his ankles.  *Id.* ¶¶ 14-15.

18     On the evening of November 28, 2006, plaintiff was moved to Z Unit (Administrative

19  Segregation Unit).  Compl. ¶ 18; MSJ, Ex. U at AS003.  He remained there until October 8,

20  2008, when he was transferred following his prison disciplinary conviction for the attempted

21  murder of a peace officer.  MSJ, Ex. A at CF004, CF149; MSJ, Ex. U at AS066.

22     Plaintiff claims that on November 28, 2006, defendant Kirkland pushed him into a

23  holding cage, attempted to scrape his face against the cage, and directed racial epithets at him.

24  Compl. ¶¶ 18-19.  Plaintiff claims that defendant Kirkland then stripped him to only his boxers

25  and put him in a cell that had been intentionally flooded with toilet water.  *Id.* ¶ 21.  Plaintiff

26  ////

4

1   claims he was not provided with dry bedding or a mattress until the evening of November 30,

2   2006, *id.* ¶¶ 25-28, and that he was not given clothing until December 1, 2006, *id.* ¶ 30.

3        Plaintiff also claims that for the next seven or eight months, defendant Kirkland, who was

4   sometimes joined by defendants Kissinger, Sanchez, Garate, or Aurich, would pull plaintiff from

5   his cell at least every other week for a cell search, and when plaintiff would return, his cell

6   would be flooded with toilet water, and his property, including inmates appeals, his toothbrush,

7   soap and bedding, would be missing or thrown in the toilet.  Compl. at 13, 15-17, 21-23.[2]

8   Plaintiff claims that these same defendants would also throw his dinner tray at him, not feed him,

9   spit in his food, smash his food, withhold entrees, or run their fingers through his food.  *Id.*

10   ¶¶ 24, 32, 43, 44, 46, 51.  Plaintiff claims that the only days he could count on receiving a dinner

11   tray that had not been tampered with was on Sundays and Mondays, when Kirkland was not

12   working.  *Id.* ¶ 42.

13        Plaintiff was cleared for exercise on December 7, 2006.  MSJ, Ex. A at CF062; Pl.'s Dep.

14   at 274:4-13.  He was supposed to exercise Monday and Wednesday mornings, and Friday

15   afternoons.  Pl.'s Dep. at 275:8-276:6.  Plaintiff claims that defendant Kirkland did not allow

16   him his afternoon exercise on Fridays.  *Id.* at 276:3-6.  Plaintiff admits that he stopped going to

17   exercise on December 15, 2006, until sometime in January, because it was cold in the mornings.

18   *Id.* at 276:19-277:2.  In January, however, plaintiff claims that defendant Kirkland again refused

19   to give him afternoon yard on Fridays.  *Id.* at 277:1-278:4.

20        Plaintiff claims that he informed defendant Warden Felker about the alleged ongoing

21   harassment from defendants.  Compl. at 23.  Plaintiff believes that the defendants harassed him

22   in retaliation for his involvement in the assault on Officers Schwab and Aurich.  Opp'n at 15.

23        Plaintiff seeks damages and an injunction preventing defendants from ever working in a

24   facility where plaintiff is or may be housed in the future.  Compl. § V.

25   

26       [2] For ease of reference, all references to page numbers in the complaint are to those
assigned via the court's electronic filing system.

**II.      Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts material to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving

party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

7

1    claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

2    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

3    or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

4    for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

5    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

6    that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

7    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

8           The court does not determine witness credibility.  It believes the opposing party's

9    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

10   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

11   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

12   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

13   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

14   at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

15   (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

16   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

17   475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any

18   reasonable inferences that might be drawn from it could not support a judgment in favor of the

19   opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

20   genuine dispute over an issue that is determinative of the outcome of the case.

21          As noted, *supra*, defendants' re-filed motion for summary judgment included a notice to

22   plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the

23   Federal Rules of Civil Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v.*

24   *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999);

25   *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

26   ////

1  **III.    Discussion**

2       Plaintiff's § 1983 claims allege violations of his First and Eighth Amendment rights.  To

3  state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or

4  statutory right; and (2) that the violation was committed by a person acting under the color of

5  state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th

6  Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish

7  the defendant's personal involvement in the constitutional deprivation or a causal connection

8  between the defendant's wrongful conduct and the alleged constitutional deprivation.  *See*

9  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th

10 Cir. 1978).

11      To state a viable First Amendment retaliation claim, a prisoner must allege five elements:

12 (1) that a state actor took some adverse action against an inmate (2) because of (3) that inmate's

13 protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

14 rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v.*

15 *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

16      The Eighth Amendment protects prisoners from inhumane methods of punishment and

17 from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

18 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and

19 only those deprivations denying the minimal civilized measure of life's necessities are

20 sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

21 503 U.S. 1, 9 (1992).  " Prison officials have a duty to ensure that prisoners are provided

22 adequate shelter, food, clothing, sanitation, medical care, and personal safety.  The

23 circumstances, nature, and duration of a deprivation of these necessities must be considered in

24 determining whether a constitutional violation has occurred.  The more basic the need, the

25 shorter the time it can be withheld."  *Johnson v. Lewis*, 217 F.3d 726, 731-732 (9th Cir. 2000)

26 (quotations and citations omitted).

1    Negligence does not amount to a violation of a federal constitutional or statutory right.

2    *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable

3    under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to

4    inmate health or safety[.]"); *see also id.* at 835 ("[D]eliberate indifference describes a state of

5    mind more blameworthy than negligence.").

6    "[W]henever prison officials stand accused of using excessive physical force in violation

7    of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .: whether force was

8    applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

9    cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  While malicious and sadistic uses

10   of force always violate contemporary standards of decency, not every "malevolent touch" by a

11   prison guard is actionable as an Eighth Amendment violation.  *Id.* at 9.  "The Eighth

12   Amendment's prohibition of cruel and unusual punishment necessarily excludes from

13   constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

14   of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (internal quotation marks and

15   citations omitted).  What violates the Eighth Amendment is "the unnecessary and wanton

16   infliction of pain," i.e., infliction of suffering that is "totally without penological justification."

17   *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

18   The following factors are relevant to a determination of whether a use of force violated

19   the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need

20   for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the

21   officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts

22   made to temper the severity of the forceful response.  *Whitley v. Albers*, 475 U.S. 312, 321

23   (1986).

24   To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

25   plaintiff must establish that he had a serious medical need and that the defendant's response to

26   that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

*also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*  It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

> **A.** **Claims Against Defendants Brown and Marsh Based on Conditions on the Yard Following Inmate Assault on Officers**

Plaintiff alleges that after being pepper sprayed, he was forced to be on his knees and in tight handcuffs, for five hours.  He claims he was subjected to harsh language and racial epithets, and that when he fell over because of the pain, he was propped back up and threatened to be beaten if he fell again.  He alleges that he was injured, in pain, and denied medical care.  He claims that he was only allowed to sit when he finally fell over and could not get back up again.

////

1  *See* Compl. at 27; Opp'n at 4.  Plaintiff submits no evidence, however, linking any of the

2  defendants to these alleged violations of his rights.

3        According to plaintiff, defendants Brown and Marsh were in charge of the correctional

4  officers who kept his handcuffs on, made him kneel, walked him in leg irons, and did not

5  summon medical care when he asked for it.  MSJ, Ex. C ("Pl.'s Dep.") 139:2-22.  Plaintiff

6  purports to be suing defendants Brown and Marsh under the theory of respondeat superior.

7  Opp'n at 12.  However, plaintiff may not sue any official on the theory that the official is liable

8  for the unconstitutional conduct of his or her subordinates.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

9  1948 (2009).  Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff

10  must plead that each Government-official defendant, through the official's own individual

11  actions, has violated the Constitution."  *Id.*  Plaintiff has not done so in this case.

12        The evidence shows that plaintiff had already been handcuffed by Officer Schwab when

13  defendant Marsh arrived on the scene.  And plaintiff does not know which prison officials denied

14  his requests to have his handcuffs loosened.  Marsh, who was responding to an emergency

15  situation, admits to ordering officers to have the inmate suspects kneel facing the wall.  MSJ,

16  Mem. of P. & A. at 9.  But plaintiff produces no evidence that Marsh heard and ignored any

17  requests for officers to loosen his handcuffs or to allow him to sit.  Further, it was Marsh who

18  instructed the inmates on how to decontaminate from the pepper spray.  Plaintiff argues that

19  Marsh "knew" that being on one's knees for a long period of time would cause "pain and

20  injuries," and that defendant Brown allowed defendant Marsh to do as he pleased and knew

21  "what was going on."  Opp'n at 12, 13.  These conclusory and speculative assertions, however,

22  are insufficient to raise genuine issues of fact and defeat summary judgment.  *See Soremekun v.*

23  *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

24        Viewing the evidence in the light most favorable to plaintiff, it demonstrates that the

25  conditions on the yard were uncomfortable, painful and abusive at times.  It also raises questions

26  as to whether the conditions described were unconstitutionally punitive, as opposed to

reasonable safety precautions to control the emergency situation caused by plaintiff's

participation in the attempted murder of a peace officer. *Cf. Hope v. Pelzer*, 536 U.S. 730, 738

(2002) (defendants' alleged conduct was punitive in violation of the Eighth Amendment when

they handcuffed inmate in a restricted position for seven hours in the sun, with minimal water

and no bathroom breaks and taunted him, long after any safety concerns had been abated and in

the absence of any emergency) *with Hampton v. Ayers*, No. 2:07-cv-8130 RSWL, 2011 U.S.

Dist. LEXIS 69742, at *76-77 (C.D. Cal. June 2, 2011) (plaintiff, who had to lay face down on

ground for two to three hours awaiting his turn to be handcuffed following a disturbance at the

prison, had not shown deliberate indifference, given that there were 300 to 400 inmates on the

yard, and the handcuffing took a long time due to the precautions deemed necessary for staff

safety).  However, plaintiff presents no evidence that either of these two defendants engaged in

any specific conduct giving rise to the Eighth Amendment violations he asserts here.  He has not

identified specific acts by either defendant showing that they applied force excessive under the

circumstances.  Nor has plaintiff produced evidence that would enable a reasonable jury to so

find.  Accordingly, he has not established a genuine dispute as to whether either of defendant

acted with deliberate indifference or maliciously or sadistically for the very purpose of causing

plaintiff harm.  Therefore, defendants Brown and Marsh are entitled to summary judgment on

this claim.

### B.     Claims Based on Denial of Medical Care by Defendant Watkins

Plaintiff alleges that MTA Watkins did not decontaminate him for pepper spray and did

not provide treatment for the alleged swelling and discoloration of his hands and obvious

weakness in his legs.  Compl. at 8, 31.  According to plaintiff, Watkins was sitting at a desk and

just yelled out, "Do you have any injuries?"  Plaintiff claims he informed her of injuries to his

hands, face, and legs, but she did not respond or look at any of his injuries.  Opp'n at 9.  He

claims that he now suffers from nerve damage because of the pinching caused by the handcuffs.

*Id.* at 11.

1       Defendant Watkins is entitled to summary judgment on this claim.  Plaintiff presents no

2  evidence that Watkins was deliberately indifferent to a serious medical need.  Although plaintiff

3  complains generally that he had injuries, he submits no evidence to create a genuine dispute as to

4  whether he had a serious medical need.  Officer Fletcher, who photographed plaintiff on

5  November 25, 2006, noted that plaintiff had no visible injuries.  Furthermore, the photographs

6  submitted with defendants' motion do not show any bruising or discoloration in plaintiff's hands.

7  Plaintiff does not submit any evidence to substantiate his claim that he had visible injuries, such

8  as bruising in his hands or obvious weakness in his legs.  Looking at the photographs in the light

9  most favorable to plaintiff, the only sign of injury appears to be minimal swelling in plaintiff's

10  palms.  But plaintiff fails to show how Watkins' response to any minor swelling in his hands

11  amounted to deliberate indifference.  *See Jones v. Blanas*, No. 2:03-cv-00119 DFL DAD, 2007

12  U.S. Dist. LEXIS 3285, at *20-21 (E.D. Cal. Jan. 16, 2007) (where deliberate indifference claim

13  was based on denial of ice pack for swollen ankle, disagreement over whether treatment should

14  have included icing to ease the swelling reflects a mere difference of opinions about the proper

15  course of treatment which does not rise to the level of a cognizable constitutional claim).  By the

16  time Watkins saw plaintiff, his handcuffs had been removed, and within several days, the

17  swelling in his hands had gone away.  Though plaintiff claims he now suffers from nerve

18  damage, he fails to point to any medical evidence to substantiate this claim.  Moreover, he links

19  his purported nerve damage to wearing the handcuffs, and does not point to any evidence

20  showing how Watkins would be responsible for that injury.  Thus, plaintiff fails to demonstrate

21  that Watkins' alleged response to his medical needs exposed him to a substantial risk of serious

22  harm or to the unnecessary and wanton infliction of pain.

23       Moreover, defendants' evidence suggests that Watkins did not completely fail to evaluate

24  plaintiff, as plaintiff contends.  Watkins documented the fact that plaintiff had been exposed to

25  pepper spray.  MSJ, Ex. H, Attach. 1.  According to Watkins, the prison policy was for inmates

26  to decontaminate with fresh water.  MSJ, Ex. H, Watkin Interrog. Resp. No. 4.  If that was not

possible, the inmate was to decontaminate through fresh air. *Id.* When Watkins saw plaintiff on the morning of November 25, 2006, she noted that he had not been decontaminated by water due to the nature of the incident. *Id.* She noted that plaintiff had been instructed on how to decontaminate through fresh air, and that he had in fact, been decontaminated through the five plus hours of exposure to fresh air that he had received prior to seeing her. *Id.* For that reason, Watkins concluded that no further decontamination was needed. *Id.*

Plaintiff contends that Watkins should have allowed plaintiff to decontaminate by water because excessive exposure to pepper spray could cause harm to his eyes, nose, mouth, and face. Opp'n at 10-11; *see Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (prison officials' failure to provide showers or medical attention to coughing and gagging prisoners during four-hour period after exposure to pepper spray may support an Eighth Amendment claim). However, plaintiff fails to demonstrate that he was exposed to an excessive amount of pepper spray or that his exposure to fresh air was insufficient for purposes of decontamination. *Cf Hampton v. Ayers*, No. 2:07-cv-8130, 2011 U.S. Dist. LEXIS 69742, at *62-67 (C.D. Cal. June 2, 2011) (finding a triable issue as to the objective prong of Eighth Amendment claim where plaintiff was not promptly provided with a shower after allegedly being sprayed with six or seven cans of pepper spray and remaining outside for several hours in the rain, which intensified the burning sensation caused by the pepper spray). Plaintiff, who admits to wiping most of the pepper spray off before he was seen by Watkins, does not submit any evidence showing that Waktins' failure to allow him to decontaminate with water caused him any injury. Moreover, even assuming that plaintiff had appeared before Watkins with a serious medical need related to the pepper spray, plaintiff's disagreement about whether he needed immediate further decontamination with water is a disagreement with the course of treatment, that does not show deliberate indifference under the Eighth Amendment. *Jackson*, 90 F.3d at 332; *Franklin*, 662 F.2d at 1344. Accordingly, defendant Watkins is entitled to summary judgment.

////

1  **C.      Claims Based on Denial of Medical Care for Cuts on Ankles**

2       Plaintiff alleges that defendants Perry, Hook, Lower, Handshumacker, and Ramsey took

3  him outside for roughly thirty minutes in freezing temperatures, while he was wearing only

4  boxer shorts, shoes, and waist and leg restraints.  *See* Compl. ¶¶ 11, 12, Ex. B (Incident Reports).

5  He claims that it was so cold his body felt numb and that the ankle restraints cut into his raw

6  skin.[3]  *Id.* ¶¶ 12, 58, 59.

7       Plaintiff also claims that the restraints cut into his ankles during the escort, causing

8  profuse bleeding, and that he was not provided with any medical treatment for his injuries.

9  Compl. ¶ 12.  Defendants argue that they are entitled to summary judgment on plaintiff's claim

10  that they denied him medical care for the cuts on his ankles.  MSJ, Mem. of P. & A. at 11-12.

11       Defendants rely on plaintiff's deposition testimony that he did not complain during the

12  escort that the waist or leg restraints were hurting or cutting him and that he did not even notice

13  that his ankles were bleeding until after the escort had ended and he was locked in his cell.

14  Plaintiff further testified that it was not until the escorting officers had left that he even requested

15  medical attention.  On these facts, no reasonable juror could conclude that the escorting officer

16  ////

17

18       [3] Defendants do not move for summary judgment on this claim. The denial of adequate clothing can be actionable under the Eighth Amendment if prison officials are deliberately
19  indifferent to the inmate's suffering. *Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1993); *cf Chatman v. Tyner*, No. 1:03-cv-6636 AWI SMS, 2009 U.S. Dist. LEXIS 14983, at *21-26 (E.D.
20  Cal. Feb. 26, 2009) (defendants not entitled to summary judgment on Eighth Amendment denial of adequate clothing claim where plaintiff produced evidence that they left him outdoors for over
21  thirty minutes in cold weather without sufficient clothing, and ignored his screams that he was freezing to death) *compare with Gunn v. Tilton*, No. CV-08-1039 PHX SRB, 2011 U.S. Dist.
22  LEXIS 29991, at *10-12 (E.D. Cal., Mar. 23, 2011) (plaintiff's temporary detention in prison exercise yard for six hours in 52 to 79 degree temperatures, wearing only a T shirt, shower-
23  shoes, and underwear, following a search of living areas after a race riot, was not sufficiently serious to form basis of an Eighth Amendment violation) *and Reyes v. Kirkland*, No. C-08-0813
24  SI, 2010 U.S. Dist. LEXIS 88715, at *13-17 (N.D. Cal., Aug. 27, 2010) (no Eighth Amendment violation when prison officials forced plaintiff to stay outside in the cold for 14 hours in
25  underwear during emergency cell searches, because while difficult and painful, the conditions were not sufficiently serious to warrant relief given the exigent circumstances).  Accordingly,
26  this claim should proceed to trial.

1    defendants were aware of, and consciously disregarded, the injuries to plaintiff's ankles.[4]  Thus,

2    plaintiff fails to establish a genuine dispute for trial as to this claim.  *See Sims v. Veal*, No. 2:07-

3    cv-0898 MCE EFB P, 2009 U.S. Dist. LEXIS 78940, at *41-42 (E.D. Cal. Sept. 2, 2009)

4    (defendants entitled to summary judgment on inmate's claim that handcuffs were too tight where

5    there was no evidence that inmate complained to them about the cuffs or that they either inferred

6    or should have inferred from any circumstances that the handcuffs were so tight that inmate was

7    at an intolerable risk of injury).

8         Plaintiff also claims that a correctional officer instructed the MTA to not give him any

9    medical aid and that he was not given soap to clean his cuts.  *See* Compl. ¶¶ 14-16.  Defendants

10   argue that this claim lacks merit because the only medical treatment plaintiff expected was to

11   have the cuts cleaned and bandaged to prevent infection.  *See* Pl.'s Dep. at 250:10-21.

12   Defendants' evidence shows that by the time plaintiff sought assistance from defendants Sanchez

13   and Essman, plaintiff had already rinsed the blood from his ankles, which were no longer

14   bleeding.  *See* MSJ, Mem. of P. & A. at 11; Pl.'s Dep. at 249:8-250:3.  Moreover, the cuts healed

15   without infection, leaving only minor discoloration on three spots on plaintiff's ankles.  *See*

16   MSJ, Mem. of P. & A. at 11; Pl.'s Dep. at 247:10-248:2, 249:8-251:24.  Plaintiff does not refute

17   defendants' evidence, and thus, fails to show any genuine dispute as to whether defendants'

18   failure to treat the cuts on his ankles exposed him to a substantial risk of serious harm.

19   Defendants are therefore entitled to summary judgment on this claim.

20        **D.    Claims Based on Denial of Food by Defendants Essman and Sanchez**

21        Plaintiff alleges that on November 25, 2006, defendants Sanchez and Essman denied him

22   food, and that for the next three days, he was either not fed or given "not even enough food to

23   feed a baby."  Compl. ¶¶ 14, 16-17.  Defendants argue that "[t]he only day Officer Essman

24   _____

25        [4] Although plaintiff contends that defendants were deliberately indifferent because they
     knew that walking in leg irons would cause cuts and bleeding, Opp'n at 14, plaintiff fails to
26   submit any evidence demonstrating how any of the defendants "knew" that the leg restraints
     would cut his ankles.

worked in that building was November 25, when he worked Second and Third Watches."[5]  MSJ,

Mem. of. P. & A. at 11.  Indeed defendants' evidence shows that the only day on which

defendant Essman was on duty was November 25, 2006.  MSJ, Ex. V, Dreith Decl., ¶ 2, Attach.

1.  More to the point, defendants contend that plaintiff received his breakfast and Officer Essman

served plaintiff his lunch that day.  Ex. K, Essman First Interrogs., Set Ten, Resp. Nos. 5-7;

Defs.' Ex. V, Dreith Decl., ¶ 2, Attach. 1.  However, defendants' motion simply underscores the

point that the issue is genuinely disputed.  In contending that Essman did not deny plaintiff food

on November 25, Essman states that his usual practice was to distribute meals to each inmate

unless the inmate refused the meal, and points to excerpts from prison log books showing that on

that day, inmate meal trays were prepared, and that "chow" had started and completed at the

times noted.  MSJ, Mem. of. P. & A. at 12 (citing MSJ, Stmt. of Undisp. Facts in Supp. Thereof

("SUF") 68).  Plaintiff, however, maintains that Essman did not feed him breakfast, lunch, or

dinner and testified at his deposition that even when Essman passed out food to other inmates, he

would "just pass[ ] [plaintiff] up."  Opp'n at 15; Pl.'s Dep. at 143:10-22.  Plainly, there is a

dispute between percipient witnesses, each claiming to have personal knowledge, as to whether

Essman did, or did not, deny plaintiff meals on November 25th.

Defendants also contend that official records show that plaintiff "was fed by other

officers" on November 26-28.  MSJ, Mem. of P. & A. at 4 (citing SUF 68).  The records relied

upon by defendants merely note who was on duty, and the times that "chow" was started and

completed.  *See* MSJ, Ex. V, Attach. 1.  The records neither demonstrate that plaintiff's claim is

implausible, nor affirmatively show that plaintiff received meals on November 25-28.

Defendants thus fail to demonstrate the absence of a genuine dispute as to whether defendants

denied plaintiff meals on these days.  Whether a jury will credit plaintiff's testimony  remains to

_____

[5] Defendants' motion does not address whether or when defendant Sanchez was on duty. However, evidence submitted with the motion suggests that Sanchez was on duty November 25-27.  *See* MSJ, Ex. K, Essman Interrogs., Resp. No. 6; MSJ, Ex. V, Attach. 1.

1  be seen.  But the dispute is material and the credibility of plaintiff's assertion cannot be resolved

2  on summary judgment.  Accordingly, defendants' motion must be denied as to this claim.

3        **E.**     **Claims Based on Kirkland's Rough Treatment in the Holding Cell**

4        Plaintiff's allegations with respect to Kirkland's treatment of plaintiff in the holding cell

5  for days after the assault on officers Schwab and Aurich consist of the following:

6        On 11-28-06 at about 8:00 p.m. plaintiff was moved to Z-Unit.  He was escorted
      there by defendant H. Kirkland, Hays, Renner and two others.  Upon arriving

7        defendant Kirkland push[ed] plaintiff into a holding cage and stepped behind him
      and continue[d] to push plaintiff to the point [t]hat plaintiff['s] face was against

8        the back of the cage at which point defendant Kirkland attempted to scrape
      plaintiff's face against the cage in a motion which can only be compared to

9        gra[t]ing chee[s]e.  At this point Kirkland stated, "What's up now gook! You
      want to take a swing at me bitch?!"  This [happened] while plaintiff was

10       handcuffed behind his back."

11       Defendant Kirkland then proceeded to take off plaintiff's left handcuff while
      leaving the right one on and holding on to it stating, "Go ahead take a swing

12       bitch."  Plaintiff responded, "I'm cool" (meaning "no").  Defendant Kirkland then
      stated "Come on bitch."  Getting no reaction from plaintiff, defendant Kirkland

13       put the left cuff back on plaintiff and stepped out of the cage stating to c/o Wright
      about plaintiff "a fucking bitch, fucking punk, a bunch of punk ass gooks."

14

15 Compl. ¶¶ 18-19.  Defendants summarily argue that Kirkland is entitled to summary judgment

16 on this claim because plaintiff has not alleged an injury of any kind.  MSJ, Mem. of P. & A. at

17 12-13.  The argument misses the point.

18       The "core judicial inquiry" on an Eighth Amendment excessive force claim is "not

19 whether a certain quantum of injury was sustained, but rather whether force was applied in a

20 good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

21 *Wilkins v. Gaddy*, 130 S. Ct. at 1178 (internal quotations omitted).  While the failure of the force

22 applied to produce an injury may be some evidence bearing on the relevant inquiry, the court's

23 focus must be on whether the amount of force applied was reasonable under the circumstances.

24 In *Wilkins*, the Supreme Court observed that the "extent of injury may [ ] provide some

25 indication of the amount of force applied," but cautioned that injury and force "are only

26 imperfectly correlated, and it is the latter that ultimately counts."  *Id.* at 1178-79.

Here, plaintiff has alleged facts that specifically describe an application of force to him that was malicious and sadistic rather than as a part of a good faith effort to maintain or restore discipline. Moreover, that force was allegedly applied only a few days after plaintiff was charged with a violent assault on other officers. If plaintiff's description of the force applied by Kirkland is believed, it suggests a punitive rather that reasonably necessary application of force. The sole fact that plaintiff may not have been injured by defendant's alleged gratuitous use of force is not dispositive of whether that force was excessive. *See Wilkins*, 130 S. Ct. at 1179 ("To conclude . . . that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry." (internal quotation omitted)). Plaintiff's sworn factual allegations, if believed at trial, are sufficient to establish an Eighth Amendment violation. Defendants have not met their initial burden of demonstrating the absence of a genuine material factual issue as to this claim.

## F.      Claims Based on Defendants' Use of Harsh Language or Racial Epithets

Plaintiff alleges that defendants repeatedly called him a "fucking bitch," and a "gook." *See* Compl. Defendants argue that these allegations fail to state a claim under section 1983. MSJ, Mem. of P. & A. at 13. Indeed, verbal harassment alone is insufficient to state a claim under the Eighth Amendment. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). Thus, although the statements may have relevance to disputed facts in the other claims, there is no genuine dispute as to whether defendants' use of harsh or vulgar language itself amounted to a deprivation of plaintiff's constitutional rights.

## G.      Claims Based on Tampering with/Denial of Plaintiff's Food

Plaintiff claims that during the months he was housed in the Z Unit, defendants Kirkland, Kissinger, Sanchez, Garate, and/or Aurich would repeatedly deny him meals or tamper with his food. *See, e.g.,* Compl. ¶¶ 24, 32, 41-43, 46, 51, and pages 28-30. Defendants move for summary judgment on the grounds that this claim is implausible and because allegations that defendants served meals in a way that plaintiff found to be unpleasant, unsanitary, or not

aesthetically pleasing do not state a constitutional claim.  MSJ, Mem. of P. & A. at 13-14 (citing

*LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)).

In contending that this claim is implausible, defendants rely on Garate's interrogatory responses which simply recite defendants' version of a factual dispute over plaintiff's allegations.  MSJ, Mem. of P. & A. (citing SUF 80).  In those responses, Garate explains that because the food carts had narrow slots for the paper food trays, juice boxes and milk cartons placed on those trays would sometimes be pressed down to fit.  MSJ, Ex. Q, Garate Interrog. Resp. No. 15.  Garate also explains that food trays were not prepared for particular inmates.  *Id.* Instead, according to Garate, inmates were given whatever tray the officer pulled from the cart. *Id.*  Garate states that the food trays were prepared under his supervision to ensure that each tray had a full portion for each inmate.  *Id.*  Lastly, Garate explains that to feed inmates, defendants had to unlock a food port and then pass the dinner tray through.  *Id.*  Defendants argue that plaintiff's claim is implausible because plaintiff does not explain what he means when he says that defendants "threw" his dinner tray.  MSJ, Mem. of P. & A. at 14.

Defendants have failed to demonstrate the absence of a genuine dispute over a material fact.  They also fail to show that plaintiff's allegations must be summarily rejected as implausible.  While the allegations are clearly disputed, he has alleged that over a period of months his meals were either tampered with or repeatedly withheld from him.[6]  If a jury credits his testimony in that regard it could find a violation of the Eighth Amendment.  *See Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (deliberate and unnecessary withholding of food essential to maintain normal health can violate the Eighth Amendment); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (adequate food is a basic human need protected by the Eighth Amendment).  Plaintiff has alleged more than an occasional instance of being served dinner in an

---

[6] Plaintiff's allegations in the complaint are verified, Compl. at 3., may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and sets forth the requisite facts with specificity.  *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010).

unpleasant manner.  *See LeMaire*, 12 F.3d at 1456 ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation").  Plaintiff alleges that over the course of several months, defendants frequently threw his dinner trays at him, refused to feed him, or would spit in or run their fingers through his food.  *See* Compl. ¶¶ 24, 32, 43, 44, 46, 51.  He claims he could only count on receiving a dinner tray that had not been tampered with on Sundays and Mondays, when defendant Kirkland was not working.  *Id.* ¶ 42.  The complaint specifically alleges that defendant Garate allowed defendant Kirkland to prepare paper trays for the sole purpose of throwing them, and that Garate sometimes joined in.  *Id.* ¶ 32.  Plaintiff also alleges that defendants intentionally smashed his dinner tray with another tray as a form of harassment.  *Id.* ¶ 43, 46, and pages 28-29.  Garate's interrogatory responses do not make these allegations implausible.  For example, assuming the truth of plaintiff's factual contentions defendants could have spit in, thrown, or removed the entree from plaintiff's tray after it had been pulled from the cart.  More importantly, although defendants argue that plaintiff's version is not credible, that simply cannot be resolved on summary judgment.  The allegations that defendants "threw" plaintiff's dinner tray are self-explanatory and not implausible in light of defendants' evidence.  Thus, defendants' motion must be denied as to this claim.

### H.    Claims Based on Defendants' Cell Searches and Destruction of Plaintiff's Bedding, Toiletries, Mail, and Inmate Appeals

Plaintiff claims that on November 28, 2006, defendant Kirkland stripped him to only his boxers and put him in a cell that had been intentionally flooded with toilet water.  *Id.* ¶¶ 20-21.  Plaintiff claims he was not provided with dry bedding or a mattress until the evening of November 30, 2006, *id.* ¶¶ 25-28, and that he was not given clothing or toiletries until December 1, 2006, *id.* ¶ 30.  On the evening of December 1, however, defendants Kirkland and Kissinger allegedly removed plaintiff from his cell for a cell search, and when plaintiff returned, his cell was flooded again and his toiletries and inmate appeals were either destroyed or missing.  *Id.*

¶ 34.  On December 6, 2006, defendants Kirkland, Kissinger, and Sanchez allegedly conducted another cell search, and once again, plaintiff's cell was flooded, and his inmate appeals were missing or destroyed.  *Id.* ¶ 41.  Beginning on December 15, 2006, defendants Kirkland, Kissinger, and Sanchez would allegedly throw away plaintiff's mail.  *Id.* ¶ 43.  Plaintiff claims that defendant Kirkland would also specifically look for plaintiff's inmate appeals, intercept them and throw them away.  *Id.* ¶ 47.  Plaintiff claims that on February 2, 2007, defendants Aurich, Kirkland, Kissinger, and Garate conducted another cell search, where they looked for inmate appeals to throw away.  *Id.* ¶ 51.  In July of 2007, defendant Kirkland allegedly searched plaintiff's cell and threw away plaintiff's personal items in retaliation for plaintiff's filing of an inmate appeal.  *Id.* ¶ 47.  Plaintiff claims that cell searches like these continued on weekly basis from November 2006 through August 2007.  *Id.* ¶ 48.  He also claims that he had to be provided with new toiletries on what seemed like a daily basis because of the constant cell searches and destruction of his property.  *Id.* ¶ 44.

### 1. Bedding and Toiletries

Defendants argue that plaintiff's claim of being denied adequate bedding and hygiene supplies fails because Kirkland made a note that on November 28, 2006, plaintiff had been supplied with toiletries, clothing, and linens.  *See* MSJ, Mem. of P. & A. at 14 (citing SUF 76).  In his sworn opposition, plaintiff maintains that Kirkland threw him into a flooded cell on November 28, 2006, and that he was denied basic supplies and food for several days.  Opp'n at 6.  This is sufficient to create a triable issue of fact.

Defendants also argue that plaintiff's bedding and toiletries claim fails because: 1) plaintiff admits that other officers gave him bedding, clothing and toiletries a day or two later; and 2) plaintiff cannot show any harm or injury "by what is at best a short delay" in receiving his bedding and supplies.  *See* MSJ, Mem. of P. & A. at 14.  Defendants' argument ignores the allegations that after being provided with new supplies on or around December 1, defendants went into plaintiff's cell that same night, and threw his toiletries in the toilet, flooded his cell

1   causing his mattress and bedding to become wet, and confiscated his inmate appeals.  *See*

2   Compl. ¶ 34.  Defendants' argument also ignores the allegation that these types of cell searches

3   continued for months on a weekly basis.  *Id.* ¶ 48.  The fact that plaintiff admitted to receiving

4   new supplies on the morning of December 1 does not demonstrate the absence of a genuine

5   dispute as to this claim.

6                    **2.  Mail and Inmate Appeals**

7           Defendants argue that plaintiff's claim that defendants confiscated his personal property,

8   including legal work, mail, and inmate appeals, fails to state a cognizable due process claim.

9   MSJ, Mem. of P. & A. at 15.  Indeed, plaintiff has not stated a due process claim because

10  plaintiff has an adequate post deprivation remedy under California law.  *See Barnett v. Centoni*,

11  31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) ("[A] negligent or intentional deprivation of a

12  prisoner's property fails to state a claim under section 1983 if the state has an adequate post

13  deprivation remedy.").[7]

14  **I.      Claims Based on Retaliation for Attacking a Correctional Officer**

15          Plaintiff also claims that the defendants' conduct was in retaliation for his participation in

16  the attack on Officers Schwab and Aurich.  Defendants seek summary judgment on this claim,

17  arguing that attacking an officer is not a protected activity under the First Amendment.  MSJ,

18  Mem. of P. & A. at 16.  Plaintiff's opposition appears to concede the point.  He maintains that

19  defendants' conduct was motivated by plaintiff's involvement in the assault on the officers.

20  Opp'n at 15, 20.  Clearly, plaintiff's involvement in the officer assault is not conduct that is

21  protected by the First Amendment.  *See Nunez v. Ramirez*, No. 09-cv-413 WQH (BLM), 2010

22  U.S. Dist. LEXIS 28689, at *13-14 (S.D. Cal. Mar, 24, 2010) ("[D]irect, face-to-face

23

24          [7]  Plaintiff has, however, stated a cognizable retaliation claim based on the allegations
    that Kirkland's cell searches were motivated by plaintiff's filing (or attempt at filing)
25  administrative appeals.  *See* Compl. ¶¶ 47-48; *see also* Opp'n at 19 (arguing that Kirkland's cell
    searches were in retaliation for plaintiff's complaints).  Defendants have not moved for summary
26  judgment on this claim and it will proceed to trial.

1   confrontations that present "a danger of disturbance and disruption to institutional order and

2   discipline" are not protected by the First Amendment).  Accordingly, defendants are entitled to

3   summary judgment on this claim.

4           **J.      Claims Based on Denial of Exercise of Friday Afternoons**

5           Plaintiff claims that defendant Kirkland did not allow him his afternoon exercise on

6   Fridays.  Compl. ¶¶ 46-47, Pl.'s Dep. at 276:3-6; 277:1-278:4.  Defendants' evidence shows that

7   plaintiff was cleared for exercise on December 7, 2006.  MSJ, Ex. A at CF062; Pl.'s Dep. at

8   274:4-13.  Plaintiff admits that he stopped going to exercise on December 15, 2006, until

9   sometime in January, because it was cold in the mornings.  Pl.'s Dep. at 276:19-277:2.  In

10  January, however, plaintiff claims that defendant Kirkland again refused to give him afternoon

11  yard on Fridays.  *Id.* at 277:1-278:4.  Prison records show that from December 2006 through

12  August 2007 (1) plaintiff often refused yard time; (2) there was sometimes no yard on Fridays

13  because of lockdowns; (3) yard was sometimes not held because of staffing shortages or the need

14  to remove snow; and (4) on several occasions, plaintiff had extended yards of three hours and

15  twenty minutes either on Fridays or a day or two before or after Friday.  *See* SUF 84.  Prison

16  records also show that beginning in March 2008, plaintiff began receiving exercise on different

17  days than Mondays, Wednesdays, and Fridays.  *Id.*  Further, defendant Kirkland did not work in

18  plaintiff's unit from August 2007 to June 2008.  Compl. ¶¶ 53, 55.

19          Defendants' evidence provides an alternate explanation for why plaintiff did not always

20  receive yard time on Fridays.  It also shows that Kirkland was not even working in plaintiff's

21  housing unit for at least ten of the months that plaintiff was in Z Unit.  In response, plaintiff

22  contends that defendant Kirkland falsified records.  Opp'n at 19.  However, plaintiff presents no

23  evidence of that and does not offer any specific information regarding which records Kirkland

24  allegedly falsified.  Furthermore, most of the records relied upon by defendants in arguing

25  against this claim were not prepared by defendant Kirkland.  Plaintiff thus fails to demonstrate

26  the existence of a genuine dispute as to his claim that defendant Kirkland violated his Eighth

1   Amendment rights by denying him yard time.  *See Norwood v. Vance*, 591 F.3d 1062, 1070 (9th

2   Cir. 2010) (temporary denial of outdoor exercise, without a medical effect, is not a substantial

3   deprivation under the Eighth Amendment).

4          **K.      Claims Against Warden Felker**

5          Plaintiff wrote letters to defendant Warden Felker in March and April 2008, complaining

6   about defendant Kirkland's actions and defendant Garate's failure to stop him.  Compl. ¶ 54,

7   Exs. P, Q, R.  Even though plaintiff's own letters reveal that Felker responded to plaintiff by

8   directing him to use the administrative appeals process, *see* Compl. Ex. Q, plaintiff complains

9   that Felker violated his constitutional rights by failing to act on his requests for help.  *Id.* at 26.

10  Defendants argue that even if plaintiff could show misconduct by defendant Kirkland or other

11  defendants, he cannot show that defendant Felker caused the misconduct and that Felker is

12  therefore not liable under section 1983.  MSJ, Mem. of P. & A. at 17.  Indeed, a supervisor may

13  only be held liable for the constitutional violations of his or her subordinates if he "participated

14  in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*

15  *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Through his opposition, plaintiff does not identify

16  what unconstitutional conduct defendant Felker caused or should have prevented.  Rather,

17  plaintiff argues generally that Felker should have investigated or taken corrective action in

18  response to his letters.  Opp'n at 21.  This is not sufficient to create a genuine dispute as to

19  Felker's liability under § 1983.

20         **L.      Claims for Injunctive Relief**

21         Plaintiff seeks an injunction preventing defendants from ever working in a facility where

22  plaintiff is or may be housed in the future.  Compl. § V.  Defendants argue that this request is

23  moot because plaintiff has been transferred to a different prison.  MSJ, Mem. of P. & A. at 6.

24  Defendants' motion must be denied as to this claim, as they fail to demonstrate how plaintiff's

25  transfer to a different prison renders his particular request for injunctive relief moot.

26  ////

**IV.     Recommendation**

In accordance with the above,  IT IS HEREBY RECOMMENDED that:

1.  Defendants' August 3, 2012 motion for summary judgment be granted as to defendants Brown, Marsh, Watkins, and Felker; and

2.  That this action proceed on plaintiff's requests for damages and injunctive relief based on the following claims:

a.  an Eighth Amendment claim against defendants Perry, Hook, Lower, Handshumacker, and Ramsey based on the escort in freezing temperatures with restraints and minimal clothing;

b.  an Eighth Amendment claim against defendants Sanchez and Essman based on the denial of food from November 25, 2006 to November 28, 2006;

c.  an Eighth Amendment claim against defendant Kirkland based on the rough treatment of plaintiff in the holding cell;

d.  an Eighth Amendment claims against defendants Kirkland, Kissinger, Sanchez, Garate, and Aurich based on their tampering with/denial of food, and frequent cell searches, resulting in the flooding of plaintiff's cell and bedding and the confiscation or destruction of his toiletries; and

e. a First Amendment retaliation claim against defendants Kirkland, Kissinger, Sanchez, Garate, and Aurich based on their destruction of plaintiff's personal property, mail, and inmate appeals because plaintiff filed, or attempted to file, administrative appeals.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  March 26, 2013.

4

5                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26