1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                      FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    CHANTHON BUN,                          No.  2:09-cv-631-EFB P

10                  Plaintiff,

11          v.                              PRETRIAL ORDER[2]

12   PERRY, et al.,[1]

13                  Defendants.

14

15          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

16   U.S.C. § 1983, against defendants Perry, Hook, Lower, Handshumacker, Ramsey, Sanchez,

17   Essman, Kirkland, Kissinger, Garate, and Aurich.  The claims remaining for trial include: (1) an

18   Eighth Amendment claim against defendants Perry, Hook, Lower, Handshumacker, and Ramsey

19   based on a November 25, 2006 escort ("escort claim"); (2) an Eighth Amendment claim against

20   defendants Sanchez and Essman based on the denial of food from November 25, 2006 to

21   November 28, 2006 ("denial of food claim"); (3) an Eighth Amendment excessive force claim

22   against defendant Kirkland based upon a November 28, 2006 encounter at a holding cell

23   ("excessive force claim"); (4) an Eighth Amendment claim against defendants Kirkland,

24   Kissinger, Sanchez, Garate, and Aurich based on their tampering with/denial of food, and

25          [1] The Clerk is directed to update and delete "Felker" from the case caption, as defendant
26   Felker has been dismissed.

27          [2] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.
     § 636(b)(1) and is before the undersigned pursuant to the parties' consent.  E.D. Cal. Local Rules,
28   Appx. A, at (k).

                                                  1

1   frequent cell searches, resulting in the flooding of plaintiff's cell and the denial of toiletries

2   ("harassment claim"); and (5) a First Amendment retaliation claim against defendants Kirkland,

3   Kissinger, Sanchez, Garate, and Aurich based on their destruction of plaintiff's personal property,

4   mail, and inmate appeals because plaintiff filed, or attempted to file, administrative appeals

5   ("retaliation claim").  In accordance with the parties' pretrial statements, the court orders as

6   follows:

7   **JURISDICTION/VENUE**

8   This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28

9   U.S.C. § 1391 and Local Rule 120(d).  There is no dispute over either jurisdiction or venue.

10  **UNDISPUTED FACTS**

11  1.  Plaintiff is a State prisoner in the custody of the California Department of Corrections and

12      Rehabilitation (CDCR).

13  2.  From November 24, 2006 through October 8, 2008, plaintiff was housed at High Desert

14      State Prison (HDSP).

15  3.  On November 24, 2006 at approximately 8:00 p.m., plaintiff and several other inmates

16      were involved in a staff assault on Defendant Aurich and another correctional officer in

17      the Facility A yard.

18  4.  Prison officials responded to the assault and placed the yard on lockdown.

19  5.  Plaintiff's clothes were taken for evidence.

20  6.  Plaintiff was left wearing boxer shorts.

21  7.  Plaintiff was placed in waist and leg restraints.

22  8.  A little before 4:00 a.m., Defendant Perry, the Facility D, Buildings 3 and 4 Sergeant, led

23      an escort team of officers.  They took plaintiff and three other inmates to Facility D,

24      Building 5.

25  9.  Officer Guilbeaux and Defendant Lower, who is another correctional officer, escorted

26      plaintiff.

27  10. Defendants Hook and Handschumaker were officers who escorted other inmates in the

28      group with plaintiff.

2

11. Defendant B. Ramsay, another correctional officer, was not involved with plaintiff because he was part of a different escort team that was taking other inmates to Z Unit, which is a separate and distinct unit from Facility D, where plaintiff was being escorted for housing.

12. The walk from Facility A to Facility D took less than half an hour.

13. The temperature was between fifteen and 25 degrees Fahrenheit.

14. Plaintiff was dressed in boxer shorts and shoes during the escort.

15. Plaintiff was placed in a cell in Facility D, Building 5, and the waist and leg restraints were removed.

16. Officer Essman was assigned to work in Facility D, Building 5 on November 25, 2006.

17. Officer Essman served plaintiff breakfast, lunch, and dinner on November 25.

18. Officer Essman did not work the next three days, November 26 – 28, 2006.

19. From November 26 – 28, 2006, plaintiff was fed by other officers who are not defendants.

20. Plaintiff was moved to Z-Unit (administrative segregation unit) on the evening of November 28, 2006.

21. Plaintiff was given replacement items for lost or wet personal items.

22. Plaintiff remained in the administrative segregation unit until October 8, 2008, when he was transferred to California State Prison-Corcoran.

23. Plaintiff requested medical care in July 2008.

24. After his request in July 2008, plaintiff was seen on a regular basis for his medical complaints.

25. Plaintiff continues to do push-ups and other exercises that his doctors counseled against.

**DISPUTED FACTUAL ISSUES**

Defendants previously sought summary judgment.  *See* ECF Nos. 86, 97, 98.  That motion addressed the denial of food claim, the excessive force claim, and the harassment claim.  It did not address the escort claim or the retaliation claim.

In denying the motion, the court found disputed issues of fact as to whether defendants Sanchez and Essman denied plaintiff food from November 25, 2006 through November 28, 2006.

The court also found disputed issues of fact as to whether defendant Kirkland applied force to plaintiff in the holding cell on November 28, 2006 maliciously and sadistically rather than as a part of a good faith effort to maintain or restore discipline.  In their pretrial statement, defendants state that whether Kirkland treated plaintiff "roughly," as plaintiff has alleged, is also in dispute.

As for plaintiff's harassment claim, the court found disputed issues of fact as to: (1) whether defendants Kirkland, Kissinger, Sanchez, Garate, and/or Aurich tampered with or repeatedly denied plaintiff meals while plaintiff was housed in the Z-Unit; (2) whether defendant Kirkland threw plaintiff into a flooded cell on November 28, 2006; and (3) whether plaintiff was subsequently denied basic supplies and food for several days and subjected to abusive cell searches for months thereafter on a weekly basis.  Defendants claim it also disputed: (1) whether officers "threw" plaintiff's dinner tray at him; (2) whether plaintiff received the same food as other inmates in Z-Unit and was fed the same way; (3) whether plaintiff's cell was flooded by Defendants Kirkland, Kissinger, Sanchez, Garate, and Aurich, resulting in the destruction of his bedding and toiletries; (4) whether plaintiff's toiletries and other property were confiscated while he was in Z-unit; (5) whether plaintiff was given bedding and supplies in Z-Unit; and (6) whether plaintiff was allowed to exchange laundry.

Defendants' summary judgment motion did not address plaintiff's Eighth Amendment claim against defendants Perry, Hook, Lower, Handshumacker, and Ramsey based on the November 25, 2006 escort.  In their pretrial statement, defendants identify the following disputed factual issues relevant to that claim: (1) whether plaintiff was subjected to an excessive risk to his health or safety during the escort; (2) whether Defendants Perry, Hook, Lower, Handshumacker and Ramsey were aware of an excessive risk to plaintiff's health or safety during the escort; and (3) whether Defendants Perry, Hook, Lower, Handshumacker and Ramsey ignored any excessive risk to plaintiff's health or safety during the escort.

Defendants' motion also failed to address plaintiff's First Amendment retaliation claim against defendants Kirkland, Kissinger, Sanchez, Garate, and Aurich.  Defendants identify the following disputed factual issues relevant to that claim: (1) whether Defendant Kirkland

4

1  prevented plaintiff from sending or receiving letters from his family; (2) whether Defendants

2  Kirkland, Kissinger, Sanchez, Garate and Aurich destroyed plaintiff's personal property, mail and

3  inmate appeals; (3) whether Defendant Kirkland refused to pick up plaintiff's inmate appeals; and

4  (4) whether plaintiff was prevented from filing inmate appeals or sending personal mail.

5  **DISPUTED EVIDENTIARY ISSUES**

6      Plaintiff intends to file motions in limine to exclude evidence of his criminal history, his

7  conduct in prison, and his personal affairs, background and family.[3]

8      Defendants intend to file motions in limine to: (1) object to plaintiff testifying about the

9  diagnosis and prognosis of his medical condition and the cause of any medical condition of which

10 he now complains; and (2) object to various exhibits plaintiff intends to use at trial.

11     Defendants also intend to file motions in limine to preclude plaintiff from testifying,

12 eliciting testimony, or introducing evidence of the following matters: (1) dismissed claims and

13 unrelated claims and individuals; (2) defendants' involvement in other lawsuits or incidents

14 alleging excessive force; (3) offers to compromise; and (4) CDCR's indemnification of an

15 adverse judgment.

16     Defendants also intend to file a motion in limine to permit them to introduce evidence of

17 plaintiff's and any incarcerated witness's felony conviction or sentence for impeachment

18 purposes.

19     Defendants note that they anticipate objecting to any testimony suggesting that plaintiff

20 did not participate, instigate or attack anybody on November 24, 2006, on the grounds that such

21 testimony would undermine plaintiff's disciplinary finding of guilt of battery on a peace officer.

22 They also anticipate objecting to any evidence submitted by plaintiff based upon or containing

23 inadmissible hearsay, or evidence that is irrelevant, immaterial, or incompetent.

24     Motions in limine shall be filed not later than twenty-one days before trial.  Oppositions

25 thereto shall be filed not later than fourteen days before trial.  Reply briefs, if any, shall be filed

26 not later than seven days before trial.

27 _____

28 [3] Plaintiff's "motion in limine," (ECF No. 118) is denied without prejudice to renewal in keeping with the timeframe set forth herein.

**RELIEF SOUGHT**

Plaintiff seeks $5,000,000 in compensatory damages and $1,000,000 in punitive damages. He also seeks injunctive relief.

Defendants seek judgment in their favor.

**POINTS OF LAW**

Plaintiff did not include a "Points of Law" section in his pretrial statement.

Defendants included the following "Points of Law" section in their pretrial statement:

**I. ACTING UNDER 42 U.S.C. § 1983.**

To prevail on a civil rights claim under 42 U.S.C. § 1983, a plaintiff must first demonstrate a violation of his federally-protected rights. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). There must be an actual connection or link between the defendant's actions and the plaintiff's alleged deprivation of rights. *Monell v. Dep't of Soc. Servs.*, 426 U.S. 658 (1978*); Rizzo v. Goode*, 423 U.S. 362 (1976). A person deprives another of a constitutional right within the meaning of § 1983 if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act that he is legally required to do, that causes the claimed deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vague and conclusory allegations about an official's involvement in a claimed civil rights violation are insufficient; for each defendant, the plaintiff must show specific conduct that was unlawful. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

A plaintiff must show that each of the individual defendants was personally involved in the alleged constitutional violation—that each defendant either acted affirmatively, or failed to act, in a way that violated the plaintiff's constitutional rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**II. EIGHTH AMENDMENT CLAIMS**

**A.  Excessive Force**

The Eighth Amendment prohibits prison officials from using excessive force against prisoners. However, force does not amount to a constitutional violation if it is applied in a good faith effort to restore discipline and order and "not maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). An excessive force claim under the Eighth Amendment "necessarily involves a more culpable mental state" than that required under the Fourth Amendment's unreasonable seizures restriction. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). "For this reason, under the Eighth Amendment, we look for malicious and sadistic force, not merely

objectively unreasonable force." *Id.* To constitute cruel and unusual punishment, use of physical must be repugnant to the conscience of mankind. *Hudson*, 503 U.S. at 9-10.

The relevant factors to consider in evaluating a claim of excessive force in the prison context are: (1) the extent of the injury suffered by an inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Martinez*, 323 F.3d at 1184. In considering these factors, prison authorities "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

The extent of a prisoner's injury is a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id.* In order to show a violation of the Eighth Amendment, however, an injury must be more than de minimis, but it need not be significant. *Id.* at 9-10.

## B. Conditions of Confinement

The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime. U.S. Const. amend. VIII. Where a prisoner challenges the conditions of his confinement, he must make two showings. First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind." *Id.*

Routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry. *Johnson*, 217 F.3d at 731. But deprivations denying "the minimal civilized measure of life's necessities are sufficient to state an Eighth Amendment violation. *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson*, 217 F.3d at 731 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. *Id.* "The more basic the need, the shorter the time it can be withheld." *Id.* (citing *Hoptowit*, 682 F.2d at 1259; *Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995)). More modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing. *Id.* (citing *Keenan*, 83 F.3d at 1090 91).

A prisoner's claim that defendants served him food in a manner he found unpleasant, unsanitary, or not aesthetically pleasing does not state a constitutional claim. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).

An unauthorized intentional deprivation of property by a state employee does not constitute a violation of due process if a meaningful post deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California provides a remedy for tort claims against public officials. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Govt. Code § 810-895.)

### C. Deliberate Indifference

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, the prisoner must show deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). In order to establish a constitutional violation, a prisoner must satisfy both the objective and subjective components of a two-part test. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1997)). The deprivation must be objectively serious, and the official must have acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 834; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

## III. FIRST AMENDMENT CLAIMS OF RETALIATION

A viable claim of First Amendment retaliation in the prison context requires evidence that the prison official took some adverse action against an inmate because of that prisoner's protected conduct, that such action would chill a person of ordinary firmness from future First Amendment activities, and that the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-69 (9th Cir. 2004) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) and *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)); *Barnett v. Centoni*, 31 F.3d at 815-16).

## IV. ADMISSIBILITY OF FELONY CONVICTIONS

For the purpose of attacking the character for truthfulness of a witness, evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted subject to Federal Rule of Evidence 403. Fed. R. Evid. 609(a)(1); *see e.g., United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1983) (finding that trial court properly determined that probative value of seventeen-year old conviction outweighed its prejudicial effect when needed to resolve significant conflict between defendant and the government's chief witness).

8

1

2

3

4

5

6

7

The presumption under Rule 609(a) is that the term "evidence" encompasses the essential facts of the conviction, including the statutory name of each offense, the date of conviction, and the sentence imposed. *United States v. Estrada*, 430 F.3d 606, 615-16 (2d Cir. 2005); *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (stating that impeachment with prior convictions is generally limited to the crime charged, the date, and the disposition); *see also*, 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 609.20[2] at 609-57 (2d ed. 2005) ("When a prior conviction is admissible for impeachment, the impeaching party is generally limited to establishing that bare facts of the conviction; usually the name of the offense, the date of the conviction, and the sentence.").

8

9

10

The verdict in this case will be decided by the jury after consideration of each witness's credibility. Plaintiff, to meet his burden of proof at trial, is expected to testify to his version of the events. He has also identified another inmate (Kevin Fields) as a witness for trial.

11

12

13

14

15

Rule 609 of the Federal Rules of Evidence provides that evidence of a witness's prior felony conviction may be used to impeach that witness's testimony. Defendants contend that no one who has a prior felony conviction is entitled to the false aura of veracity, which would occur if impeachment of the Plaintiff and Fields were not allowed. U.*S. v. Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("As any trial lawyer knows, felony convictions trench heavily upon such a person's credibility"). Accordingly, Defendant will seek to impeach Plaintiff's trial testimony, and that of Fields, with evidence of their prior felony convictions.

16

## V. QUALIFIED IMMUNITY

17

18

19

20

21

22

23

24

25

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the rule is to permit officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights. *Id.* at 819. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made" and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces." *Estate of Ford v. Ramirez Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Thus, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

26

27

28

In *Saucier*, the Supreme Court set forth a two-part inquiry to determine whether the immunity exits. The initial inquiry, or first prong, is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show that the officer's conduct violated a constitutional right." *Saucier*, 533 U.S.

9

at 201. If, and only if, a violation can be made out, the next step, or second prong, is to ask whether the "right is clearly established." *Id.* If the right was clearly established at the time of the alleged incident, the court must then determine whether, "under that law, could a reasonable state official have believed his conduct was lawful." *Id.* at 202; *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995)). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004); *Wilson v. Layne*, 526 U.S. 603, 614 (1999).

Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition. *Saucier*, 533 U.S. at 202; *Kennedy v. Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006). Qualified immunity allows ample room for mistaken judgments—regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact"—and applies even when wrongful conduct occurs. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The court has the discretion, based on the circumstances of the particular case at hand, to decide whether the two-part inquiry is worthwhile or if a determination can be made by analyzing a single prong of the immunity inquiry. *Pearson* at 236.

## VI. PUNITIVE DAMAGES

Plaintiff seeks punitive or exemplary damages. Plaintiff is not entitled to punitive damages. The Supreme Court has determined that punitive damages are available in a § 1983 action only when a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 51 (1983).

It is not enough that a defendant may have acted in an objectively unreasonable manner; their subjective state of mind must be assessed. *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). The plaintiff alleging a § 1983 claim has the burden of proving that punitive damages should be awarded by a preponderance of the evidence. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing Model Civ. Jury Instr. 9th Cir. 7.5 (2004)).

ECF No. 125 at 6-12.

The parties shall serve and file trial briefs (as described in Local Rule 285) no later than fourteen days before trial. The parties shall thoroughly address all applicable claims and defenses in their trial briefs.

1   **ABANDONED ISSUES**

2   　　　None.

3   **WITNESSES**

4   　　　Plaintiff's list of unincarcerated witnesses includes:[4]

5   　　　1.　HDSP CCII M. Danger

6   　　　2.　HDSP Psych Tech Hogan

7   　　　3.　HDSP Warden T. Felker

8   　　　4.　AW Complex II M. Wright

9   　　　5.　HDSP Sergeant Bond

10   　　　6.　HDSP CCII Jackson

11   　　　7.　c/o Cottrell

12   　　　8.　HDSP Lt. Dharlingue

13   　　　9.　HDSP ASU Z-Unit Law Library Officer Cotton

14   　　　10. Aw/Med Mgr T. Perez, AW

15   　　　11. R.K. Wong, AW

16   　　　12. Ombudsman, Ralyn Conner

17   　　　13. c/o Hays

18   　　　14. c/o Renner

19   　　　15. c/o Logan

20   　　　16. c/o Mowry

21   　　　17. c/o S. Jones

22   　　　18. c/o G. Jones

23   　　　19. c/o Priollo

24   　　　20. c/o Beasely

25   　　　21. c/o Delgado

26

27   　　　[4] Plaintiff moved to amend his pretrial statement with an untimely witness list. *See* ECF

28   Nos. 127, 128.  The motion is granted in that all of plaintiff's proposed witnesses are listed herein.

11

1    22. c/o Montgomery

2    23. c/o Kirkland

3    24. c/o Kissinger

4    25. c/o Sanchez

5    26. Attorney Jordan Funk and Private Investigator

6         Plaintiff seeks the court's assistance in paying the witness fees for his unincarcerated

7    witnesses.  ECF No. 128.  That request is denied.  If plaintiff intends to present these witnesses to

8    testify, it is his responsibility to obtain their presence at trial.[5]

9         Plaintiff also asks the court to "hold witness[ ] enrollments until defendants provide all

10   information and allow plaintiff the freedom to contact potential witnesses."  ECF No. 120 at 2.  It

11   is not clear what relief plaintiff is requesting.  Moreover, plaintiff has not explained what

12   information he is requesting from defendants or how, if at all, defendants have restricted his

13   freedom to contact potential witnesses.  Without such information, the court cannot grant

14   plaintiff's request.

15        Plaintiff is reminded of the requirements for obtaining the attendance of unincarcerated

16   witnesses:

17        A party need not obtain an order to produce an unincarcerated witness who intends to

18   testify voluntarily.   However, the party is responsible for ensuring attendance of such a witness

19   by way of a subpoena.  Specifically, to obtain the presence of a witness who is at liberty and who

20   refuses to testify voluntarily, the party who intends to present that witness's testimony must

21   complete a subpoena and submit it to the United States Marshal for service upon the witness.

22   Blank subpoena forms may be obtained from the Clerk of the Court.  Completed subpoenas must

23   be submitted *not earlier than four weeks and not later than two weeks before trial*.  The party

24   must also tender through the United States Marshal a money order payable to the witness in the

25   amount of the daily witness fee, $40.00, *plus the witness's travel expenses*.  If plaintiff seeks the

26   witness's presence and proceeds in forma pauperis, then plaintiff must also submit a copy of the

27   ───────────────

28   [5] The court notes, however, that per defendants' representation, the three defendant
     witnesses will be present at trial.  *See* ECF No. 131.

1   order granting him leave so to proceed. *The United States Marshal will not serve a subpoena*

2   *upon an unincarcerated witness without the witness fee and travel expenses having been*

3   *tendered.* No statute authorizes the use of public funds for expenses in civil cases and so even a

4   plaintiff proceeding in forma pauperis must tender the fees.

5        Plaintiff's list of incarcerated witness includes:

6       1.  Inmate Shankar (CDCR No. T91407), Substance Abuse Treatment Facility

7       2.  Inmate Xiong (CDCR No. T29966), Pleasant Valley State Prison

8       3.  Inmate Hoac (CDCR No. K19964), Folsom State Prison

9       4.  Inmate Yang (CDCR No. K91139), Folsom State Prison

10      5.  Inmate Kinikini (CDCR No. F05107), Substance Abuse Treatment Facility

11       Plaintiff has not complied with the requirements for calling incarcerated witnesses.  If the

12  incarcerated witness is willing to testify voluntarily, the court will issue an order directing the

13  custodian to produce the witness at trial only upon a showing that the witness has agreed to testify

14  voluntarily and has actual knowledge of relevant facts.  Plaintiff can make this showing by

15  submitting a sworn affidavit signed by either himself or the witness.  If the incarcerated witness

16  does not intend to testify voluntarily, plaintiff must file a motion for an order directing that

17  witness to appear.  Such a motion must also be accompanied by an affidavit showing that the

18  witness has actual knowledge of relevant facts, but that the witness does not intend to testify

19  voluntarily.  Plaintiff shall have thirty days from the date of this order to submit the necessary

20  information to obtain the attendance at trial of his incarcerated witnesses.  Without such

21  information, the court will not issue an order directing the custodian to produce any incarcerated

22  witness for trial.

23       Defendants intend to call the following witnesses:

24        1.  T. Kissinger

25        2.  J. Hook

26        3.  H. Kirkland

27        4.  G. Handschumaker

28        5.  R. Essman

1          6.  C. Lower

2          7.  T. Sanchez

3          8.  R. Garate

4          9.  Z. Aurich

5          10. B. Ramsey

6          11. M. Perry

7          12. D. Fletcher

8          13. J. Marsh

9          14. D. Spangle

10         15. E. Schwab

11         16. R. Dreith

12         17. M. DeForest

13         18. D. Swingle, M.D. – expert witness

14         19. Custodian of Human Resource/Employment Records at High Desert State Prison

15         20. Custodian of Records for Plaintiff's central file and Unit Health Records

16         21. Custodian of Records for facility logbooks retained at High Desert State Prison

17         22. Litigation Coordinator, High Desert State Prison

18         23. Litigation Coordinator, California Men's Colony

19         Any party may call any witness identified by another party.  No other witness will be

20 permitted to testify.  The court will, not later than six weeks before trial, issue all necessary writs

21 to provide for plaintiff's attendance at trial.

22 **EXHIBITS, SCHEDULES, AND SUMMARIES**

23         Plaintiff expects to use the following exhibits at trial:

24    1.  Sanchez's responses to interrogatories

25    2.  Garate's responses to interrogatories

26    3.  Hook's responses to interrogatories

27    4.  Record of Daily Activity for Plaintiff (Inmate Segregation Record)

28    5.  Daily Record (HDSP, D-Yard, Building 5)

14

1    6.  Inmate Buth's staff complaint (Log No. 08-02563)

2    7.  Inmate Xiong's staff complaint (Log No. 08-00252)

3    8.  Inmate Xiong's staff complaint (Log No. 07-03504)

4    9.  Inmate Lee's staff complaint (Log No. 07-2751)

5    10. Inmate Buth's staff complaint (Log No. 07-2343)

6    11. Inmate Lasaphangthong's staff complaint (Log No. 07-02598)

7    12. Inmate Ryle's staff complaint (Log No. 07-00672)

8    13. Inmate Chatman's staff complaint (Log No. 08-02830)

9    14. Brown's responses to interrogatories

10   15. Marsh's responses to interrogatories

11   16. Plaintiff's July 8, 2007 request for interview

12   17. Plaintiff's September 17, 2007 request for interview

13   18. Plaintiff's numerous complaints and requests for interview regarding mail tampering

14   19. Plaintiff's request for help from Lt. Dharlingue

15   20. Letter from plaintiff's sister

16   21. Cell search slip

17   22. Various notices regarding plaintiff's appeals

18   23. Plaintiff's March 20, 2008 letter to Warden T. Felker

19   24. Plaintiff's January 7, 2008 letter to Prison Law Office

20   25. Plaintiff's harassment complaint (Log No. 08-00254)

21   26. Plaintiff's May 10, 2008 letter to Warden T. Felker

22   27. Plaintiff's April 11, 2008 letter to Warden T. Felker

23   28. Plaintiff's August 15, 2007 Letter to Internal Affairs

24   29. Plaintiff's complaint of cell search (Log No. 03229)

25   30. Plaintiff's second letter to ombudsman

26   31. Letters to plaintiff from ombudsman

27   32. Plaintiff's complaint (Log No. 02169)

28   33. Perry's responses to interrogatories

34. Lower's responses to interrogatories

35. Essman's responses to interrogatories

36. Kirkland's responses to interrogatories

37. Kissinger's responses to interrogatories

38. Aurich's responses to interrogatories

39. Ramsey's responses to interrogatories

40. Photo One of plaintiff

41. Photo Two of plaintiff

Defendants expect to use the following exhibits at trial:

1.   Plaintiff's Abstract of Judgment, Case No. 97NF1524, filed April 3, 1998

2.   Plaintiff's Abstract of Judgment, Case No. CH025583, filed July 8, 2008

3.   Crime/Incident Report Incident Log No. HDP-FA2-06-11-0591 dated November 24, 2006

4.   Rules Violation Report, Log No. FA-07-02-020R

5.   Medical Report of Injury Or Unusual Occurrence, dated November 24-25, 2006

6.   Relevant portions of plaintiff's Unit Health records from November 24, 2006 through October 8, 2008

7.   Relevant portions of plaintiff's mental health records from November 24, 2006 through October 8, 2008, pertaining to plaintiff's stressors and emotional distress claims made to treating mental health providers

8.   Plaintiff's grievances, log # HDSP-Z-08-00254, HDSP-Z-08-01206, and HDSP-Z-08-01906

9.   Photos and diagrams of plaintiff and HDSP facilities, including housing units, food trays and equipment, including restraint gear

10. Facility Logbooks for Facility D, HDSP November 25, 2006 through November 28, 2006

11. Inmate Segregation Records, CDCR Form 114, for plaintiff from November 25, 2006 through October 8, 2008

12. Custody Sign In & Sign Out Sheet for Facility D and Z Unit at HDSP from November 25, 2006 through October 6, 2008

13. Other portions of plaintiff's Central File for purposes of impeachment/rebuttal, or refreshing recollection, as may be determined at trial

14. Declarations of plaintiff filed in litigation, as well as complaints or other pleadings filed by plaintiff, and prior testimony given under oath, as may be determined at trial to be relevant for purposes of impeachment or rebuttal.

The parties shall mail copies of their exhibits, schedules, and summaries and other items they anticipate offering into evidence to all other parties no later than twenty-eight days before trial.

Objections to a party's items sought to be introduced into evidence shall be filed twenty-one days before trial.  Each item to which no pretrial objection is made will be forthwith received into evidence.

If defendants object to any of plaintiff's exhibits which purport to be copies of records from the California Department of Corrections and Rehabilitation on foundational grounds or otherwise dispute the authenticity of those copies, defendants shall subpoena or otherwise produce the custodians of the records for testimony at trial. To the extent defendants anticipate that plaintiff will so object, the custodians of records are permitted to authenticate documents through their declarations.

Plaintiff will use numbers to mark his exhibits; defendants will use letters.

The parties are directed to bring an original and one copy of each exhibit to trial.

**DISCOVERY DOCUMENTS**

At trial, defendants may offer portions of plaintiff's deposition transcript (or exhibits appended thereto) for purposes of impeachment.

**FURTHER DISCOVERY OR MOTIONS**

Defendants state that they may bring a motion under Federal Rule of Civil Procedure 50.

Plaintiff has filed several motions.

First, plaintiff requests that he be provided with the assistance of a Cambodian interpreter at trial.  ECF No. 129.  Defendants shall file a response to this request within thirty days from the date this order is issued.

1    Second, plaintiff requests that the court appoint counsel. ECF No. 129.  District courts

2    lack authority to require counsel to represent indigent prisoners in section 1983 cases.  *Mallard v.*

3    *United States Dist. Court*, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may

4    request an attorney to voluntarily to represent such a plaintiff.  *See* 28 U.S.C. § 1915(e)(1);

5    *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332,

6    1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court

7    must consider the likelihood of success on the merits as well as the ability of the plaintiff to

8    articulate his claims pro se in light of the complexity of the legal issues involved.  *Palmer v.*

9    *Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  Having considered those factors, the court finds there

10   are no exceptional circumstances in this case.

11   Lastly, plaintiff requests that when he is transferred to a new prison for the upcoming trial,

12   he: (1) be allowed to transport all of his legal property with him; (2) be given immediate access to

13   his legal property upon his arrival; (3) be granted single-cell status so he can concentrate; and (4)

14   be afforded daily access to the library.  ECF No. 130.  Plaintiff's request is denied without

15   prejudice.  "Courts must accord wide-ranging deference to prison administrators in the adoption

16   and execution of policies and practices that in their judgment are needed to preserve internal order

17   and discipline and to maintain institutional security."  *Toussaint v. McCarthy*, 801 F.2d 1080,

18   1104 (9th Cir. 1986) (internal quotation and citation omitted).  At this stage in the proceedings,

19   the court will not interfere with CDCR's policies regarding how inmate property is processed

20   upon a transfer, how single-cell housing is prioritized, or how inmates are expected to request and

21   obtain library access.  If plaintiff is transferred and the receipt of his legal materials is

22   unreasonably delayed, or his library access is unreasonably restricted, he may seek court

23   intervention at that time.

24   **STIPULATIONS**

25   Defendants are willing to stipulate to the authenticity of plaintiff's unaltered records from

26   his central and medical files maintained by CDCR and any CDCR records generated and

27   maintained in the regular course of business, which may be used as exhibits at trial.  Plaintiff

28   shall, within 30 days of the date of this order, inform the court whether he so stipulates.

18

**AMENDMENTS/DISMISSALS**

None.

**SETTLEMENT NEGOTIATIONS**

The court has not held a settlement conference in this case and defendants do not believe that settlement negotiations would be successful.

**AGREED STATEMENTS**

None.

**SEPARATE TRIAL OF ISSUES**

Defendants request to bifurcate the trial on the *amount* of punitive damages, if the jury should determine that punitive damages are appropriate.  That request is granted, to the extent that defendants are permitted to reserve their testimony as to their net financial worth until after any entitlement to punitive damages has been established.  If plaintiff fails to establish that punitive damages are warranted, no additional testimony will be necessary.

**IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

This is not a case which warrants the appointment of an impartial expert witness.

**ATTORNEYS' FEES**

Plaintiff is proceeding pro se and attorney's fees are therefore not appropriate.

Defendants do not anticipate seeking attorney's fees if they prevail, but will request an award of costs.

Any motions for costs or attorneys' fees shall be filed after judgment and timely presented in accordance with Local Rules 292 and 293.

**TRIAL EXHIBITS**

No special handling of trial exhibits is expected.

**JURY TRIAL**

All parties have timely requested trial by jury.

Jury trial is scheduled to begin on November 17, 2014, at 9:30 a.m. in Courtroom No. 8, 13th Floor, before the undersigned.  Although the parties do not provide a good faith estimate, it appears that the action will be submitted to a jury for verdict within three to four days.

**PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS**

The parties' proposed jury voir dire and proposed jury instructions (as described in Local Rules 162.1(a) and 163(a)) shall be lodged with the clerk and copies served on all parties no later than fourteen days before trial.

**SUMMARY OF ORDER**

1.   The Clerk of the Court is directed to update and delete Felker from the case caption, as defendant Felker has been dismissed.

2.   Plaintiff shall have thirty days from the date of this order to: (a) submit the necessary information to obtain the attendance at trial of his incarcerated witnesses.  (Without such information, the court will not issue an order directing the custodian to produce any incarcerated witness for trial); and (b) inform the court as to whether he stipulates to the authenticity of his unaltered records from his central and medical files maintained by CDCR and any CDCR records generated and maintained in the regular course of business.

3.   Defendants shall file a response to plaintiff's request for a Cambodian interpreter at trial (ECF No. 129) within thirty days from the date this order is issued.

4.   The parties shall mail copies of their exhibits, schedules, and summaries and other items they anticipate offering into evidence to all other parties no later than twenty-eight days before trial.

5.   Objections to a party's items of evidence sought to be introduced into evidence shall be filed no later than twenty-one days before trial.

6.   Motions in limine shall be filed no later than twenty-one days before trial.

7.   Trial briefs, proposed jury voir dire, proposed jury instructions, and any agreed statement of the case shall be filed no later than fourteen days before trial.

8.   The Clerk of the Court shall terminate docket numbers 118, 127, 129, and 130.

**MODIFICATION OF PRETRIAL ORDER**

Each party is granted 30 days to object to this Pretrial Order.  Any objections shall set forth the basis of the objections and any changes to be made.  Each party is also granted 14 days

1  thereafter to respond to the other party's objections.  If no objections are made, the Pretrial Order

2  will become final without further order of the court.

3          Pursuant to Federal Rule of Civil Procedure 16, the final pretrial order shall control the

4  subsequent course of this action and will not be modified except according to its terms or to

5  prevent manifest injustice.

6          So ordered

7  DATED:  July 28, 2014.

8                                                              EDMUND F. BRENNAN
                                                               UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28